1  SANDRA E. STONE (SBN 161267)
   sstone@plawp.com
2  PACIFIC LAW PARTNERS, LLP
   2000 Powell Street, Ste. 950
3  Emeryville, CA 94608
   Tel: (510) 841-7777
4  Fax: (510) 841-7776

5  DOUGLAS W. DUNHAM (pro hac vice forthcoming)
   Douglas.dunham@dechert.com
6  BERT L. WOLFF (pro hac vice forthcoming)
   bert.wolff@dechert.com
7  DECHERT LLP
   Three Bryant Park
8  1095 Avenue of the Americas
   New York, NY 10036
9  Tel: (212) 698-3500

10 Attorneys for Defendant
   STATE FARM GENERAL INSURANCE COMPANY

11

12             UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14

15 KAREN TRINH, DDS, Inc., a California    ) Case No.: 5:20-cv-04265
   Corporation,                           )
16                                        )
                    Plaintiff,            ) **DEFENDANT STATE FARM GENERAL**
17                                        ) **INSURANCE COMPANY'S MOTION TO**
           v.                             ) **DISMISS FOR FAILURE TO STATE A**
18                                        ) **CLAIM**
   STATE FARM GENERAL INSURANCE           )
19 COMPANY, an Illinois Corporation doing ) **[Fed. R. Civ. Pro. 12(b)(6)]**
   business in California, and DOES 1 to 50, )
20 inclusive,                             ) Date:        September 2, 2020
                                          ) Time:        1:00 p.m.
21                  Defendants.           ) Location:    280 South 1st Street
                                          )              San Jose, CA 95113
22                                        )              Courtroom 5 – 4th Floor
                                          )
23                                        )
                                          )
24 ───────────────────────────────────────)

25 / / /

26 / / /

27 / / /

28 / / /

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 – Facsimile (510) 841-7776

# TABLE OF CONTENTS

**Page**

MOTION TO DISMISS ............................................................................................. 1

SUMMARY OF ARGUMENT .................................................................................. 1

POINTS AND AUTHORITIES ................................................................................. 3

LEGAL STANDARD.................................................................................................. 3

I.      PLAINTIFF FAILS TO STATE A CLAIM .......................................... 3

      A.      Plaintiff's Breach Of Contract Claim Should Be Dismissed ................... 3

            1.      Coverage For Plaintiff's Alleged Losses Is Barred By The Virus Exclusion................................................................................ 4

            2.      Even Without The Virus Exclusion, Plaintiff Does Not Allege Covered Losses ..................................................................... 8

            3.      The Policy's Civil Authority Provision Is Inapplicable.............. 12

            4.      The Policy's "Loss of Income" Coverage Is Inapplicable.......... 15

            5.      Additional Policy Exclusions Bar Plaintiff's Claims ................. 16

      B.      Plaintiff's Remaining Claims Also Fail As A Matter Of Law................ 17

CONCLUSION............................................................................................................ 20

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 – Facsimile (510) 841-7776

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Aleksick v. 7-Eleven, Inc.*,
  205 Cal. App. 4th 1176 (2012) ................................................................... 19

*Alexis v. Southwood L.P.*,
  792 So. 2d 100 (La. Ct. App. 2001) .............................................................. 5

*Allstate Insurance Co. v. Barnett*,
  2011 WL 2415383 (N.D. Cal. June 15, 2011) ............................................ 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 3, 8

*Atlas Assurance Co. v. McCombs Corp.*,
  146 Cal. App. 3d 135 (1983) ........................................................................ 5

*Bahama Bay II Condo. Ass'n, Inc. v. United Nat'l Ins. Co.*,
  374 F. Supp. 3d 1274 (M.D. Fla. 2019) ...................................................... 16

*Baker v. Nat'l Interstate Ins. Co.*,
  180 Cal. App. 4th 1319 (2009) ................................................................. 4, 7

*Bartram, LLC v. Landmark Am. Ins. Co.*,
  864 F. Supp. 2d 1229 (N.D. Fla. 2012) ...................................................... 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 3

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ...................................................................................... 8

*Certain Underwriters at Lloyd's of London v. Super. Ct.*,
  24 Cal. 4th 945 (2001) .................................................................................. 2

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*,
  90 Cal. App. 4th 335 (2001) ....................................................................... 18

*Cytopath Biopsy Laboratory, Inc. v. U.S. Fidelity & Guaranty Co.*,
  774 N.Y.S.2d 710 (App. Div. 2004) ........................................................... 16

*De Bruyn v. Super. Ct.*,
  158 Cal. App. 4th 1213 (2008) ............................................................. 5, 6, 7

*Deere & Co. v. Allstate Ins. Co.*,
  32 Cal. App. 5th 499 (2019) ......................................................................... 3

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
  636 F.3d 683 (5th Cir. 2011) ................................................................. 13, 14

*E. Enters. v. Apfel*,
  524 U.S. 498 (1998) ...................................................................................... 8

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA  94608
(510) 841-7777 - Facsimile (510) 841-7776

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*,
   66 Cal. App. 4th 1080 (1998) ................................................................................. 7

*Finkelstein v. AXA Equitable Life Ins. Co.*,
   325 F. Supp. 3d 1061 (N.D. Cal. 2018) ................................................................. 3

*Fireman's Fund Ins. Co. v. Super. Ct.*,
   65 Cal. App. 4th 1205 (1997) ................................................................................. 5

*Garvey v. State Farm Fire & Cas. Co.*,
   48 Cal. 3d 395 (1989) ......................................................................................... 6, 7

*Hartford Ins. Co. v. Miss. Valley Gas Co.*,
   181 F. App'x 465 (5th Cir. 2006) .......................................................................... 9

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*,
   2010 WL 4026375 (E.D. La. Oct. 12, 2010) ....................................................... 14

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co.*,
   2007 WL 2489711 (M.D. La. Aug. 29, 2007) ...................................................... 13

*Keetch v. Mut. of Enumclaw Ins. Co.*,
   831 P.2d 784 (Wash. Ct. App. 1992) ................................................................... 11

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
   2020 WL 886120 (D.S.C. Feb. 24, 2020) ............................................................ 13

*Landmark Hosp., LLC v. Cont'l Cas., Co.*,
   2002 WL 34404929 (C.D. Cal. July 2, 2002) ...................................................... 16

*Love v. Fire Ins. Exchange*,
   221 Cal. App. 3d 1136 (1990) ............................................................................. 18

*MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*,
   558 F.3d 1184 (10th Cir. 2009) ........................................................................... 16

*Maxum Indem. Co. v. Kaur*,
   356 F. Supp. 3d 987, 999 (E.D. Cal. 2018) ....................................................... 4, 5

*McAdam v. State National Insurance Co.*,
   2012 2012 WL 4364655  (S.D. Cal. Sept. 24, 2012) ....................................... 19, 20

*McKinnon v. Truck Ins. Exch.*,
   31 Cal. 4th 635 (2003) ........................................................................................... 3

*Mosley v. Pac. Specialty Ins. Co.*,
   2020 WL 2669896 (Cal. Ct. App. May 26, 2020) ................................................. 4

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA  94608
(510) 841-7777 - Facsimile (510) 841-7776

## TABLE OF AUTHORITIES

**Page(s)**

*Mount Vernon Fire Insurance Co. v. Adamson*,
   2010 WL 3937336 (E.D. Va. Sept. 15),
   *adopted*, 2010 WL 3937335 (E.D. Va. Oct. 6, 2010) ............................................ 5

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*,
   187 Cal. App. 4th 769 (2010) ................................................................. 1, 9

*National Children's Expositions Corp. v. Anchor Ins. Co.*,
   279 F.2d 428 (2d Cir.1960) ....................................................................... 11

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*,
   17 F. Supp. 3d 323 (S.D.N.Y. 2014) ......................................................... 11

*Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*,
   2011 WL 13214381 (E.D. Tex. Mar. 30),
   *adopted*, 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011) ............................ 14

*Palmer v. Truck Ins. Exch.*,
   21 Cal. 4th 1109 (Cal. 1999) ................................................................. 2, 3, 4

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir.1996) ....................................................................... 18

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
   2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ........................................... 13

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*,
   467 U.S. 717 (1984) .................................................................................... 8

*Petroterminal de Panama, S.A. v. Houston Cas. Co.*,
   114 F. Supp. 3d 152 (S.D.N.Y. 2015),
   *aff'd*, 659 F. App'x 46 (2d Cir. 2016) ...................................................... 17

*Petroterminal de Panama, S.A. v. Houston Cas. Co.*,
   659 F. App'x 46 (2d Cir. 2016) ................................................................ 17

*Petrovich v. Ocwen Loan Servicing, LLC*,
   2016 WL 555959 (N.D. Cal. Feb. 12, 2016),
   *aff'd*, 716 F. App'x 614 (9th Cir. 2017) .................................................... 3

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
   311 F.3d 226 (3d Cir. 2002) ................................................................. 9, 10

*Ramada Inn Ramogreen, Inc. v. Travelers Indem. Co. of Am.*,
   835 F.2d 812 (11th Cir. 1988) .................................................................. 10

*Reichert v. State Farm Gen. Ins. Co.*,
   212 Cal. App. 4th 1543 (2012) ................................................................. 16

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

# TABLE OF AUTHORITIES

**Page(s)**

*Roug v. Ohio Sec. Ins. Co.*,
  182 Cal. App. 3d 1030 (1986) ............................................................................. 2

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*,
  2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ................................................. 13, 14

*Safeco Ins. Co. v. Gilstrap*,
  141 Cal. App. 3d 524 (1983) ............................................................................. 2

*Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*,
  No. 1:20-cv-3311 (S.D.N.Y.), ECF No. 24-1, May 14, 2020 Hr'g Tr. ............... 11, 12

*Source Food Technology v. U.S. Fidelity & Guaranty Co.*,
  465 F.3d 834 (8th Cir. 2006) ............................................................................ 11

*Stewart v. Life Ins. Co. of North Am.*,
  388 F. Supp. 2d 1138 (E.D. Cal. 2005).............................................................. 19

*Stidham v. Tex. Comm'n on Private Sec.*,
  418 F.3d 486 (5th Cir. 2005) ............................................................................ 7

*StreamCast Networks, Inc. v. IBIS LLC*,
  2006 WL 5720345 (C.D. Cal. May 2, 2006) ..................................................... 18

*Sun Savings & Loan Ass'n v. Diedorff*,
  825 F.2d 187 (9th Cir. 1987) ............................................................................ 19

*Syufy Enters. v. Home Ins. Co.*,
  1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ................................................ 13, 14

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
  439 F.3d 128 (2d Cir. 2006)......................................................................... 13, 14

*United Airlines, Inc. v. Ins. Co. of State of Pa.*,
  385 F. Supp. 2d 343 (S.D.N.Y. 2005), *aff'd*, 439 F.3d 128 (2d Cir. 2006) ........... 13

*Univ. Image Prods., Inc. v. Chubb Corp.*,
  703 F. Supp. 2d 705 (E.D. Mich. 2010), *aff'd sub nom.*,
  *Univ. Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012) .......... 9, 10

*Univ. Image Prods., Inc. v. Fed. Ins. Co.*,
  475 F. App'x 569 (6th Cir. 2012) ...................................................................... 10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .......................................................................... 19

*Ward General Insurance Services, Inc. v. Employers Fire Insurance Co.*,
  114 Cal. App. 4th 548 (2003) ........................................................................... 10

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

### <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
    449 U.S. 155 (1980) ............................................................................ 8

*Worldwide Sorbent Prod., Inc. v. Invensys Sys., Inc.*,
    2014 WL 12597394 (E.D. Tex. July 31, 2014) ................................... 17

**STATUTES**

CAL. BUS. & PROF. CODE § 17200 ..................................................... 18-20

Cal. Ins. Code § 532 ................................................................................ 6

**OTHER AUTHORITIES**

U.S. CONST, amends. 5, 14 ...................................................................... 7

CAL. CONST., art. I §§ 7, 19 ..................................................................... 7

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

## MOTION TO DISMISS

Please take notice that at the time and date above, Defendant State Farm General Insurance Company ("State Farm") will move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim.

## SUMMARY OF ARGUMENT

Plaintiff has sued State Farm for coverage of business interruption losses that allegedly occurred as a result of government stay-at-home orders intended "to reduce the person to person transmission of the [corona]virus." (FAC ¶¶ 19, 21.) Plaintiff's claim for breach of contract seeks coverage under the "Loss of Income and Extra Expense" Endorsement (the "Endorsement") to its Businessowners Insurance Policy (the "Policy").[1] Plaintiff also asserts claims for breach of the implied covenant of good faith and fair dealing, bad faith denial, unjust enrichment, violation of the California Unfair Competition Law, declaratory relief, and injunctive relief.

Plaintiff's claims are barred by the clear language of the Policy and its Endorsement. In order to trigger coverage, the Policy requires "accidental direct physical loss to" Covered Property. (Policy at Ex. A-14.) As discussed below (*see* Point I.A.2 *infra*), the presence or suspected presence of a virus does not constitute the requisite "accidental direct physical loss to" Covered Property to trigger coverage. California courts have construed "physical loss" to "exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.,* 187 Cal. App. 4th 766, 778-79 (2010).

Moreover, the Policy contains a Virus Exclusion barring coverage for "any loss which would not have occurred in the absence of ... Virus." (Policy at Ex. A-16 to 17.) Plaintiff's factual allegations establish that this exclusion bars its claims. (*E.g.*, FAC ¶¶ 15-17, 19.) Under

---

[1] All Exhibits are attached to the Request for Judicial Notice submitted herewith. True and correct copies of Plaintiff's Policy Documents are compiled as Exhibit A to the Request for Judicial Notice submitted herewith. Plaintiff's Policy Booklet (the "Policy") is found on bates-numbered pages A-11 to A-55. The Endorsement is found on bates-stamped numbered pages A-61 to A-64.

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1  California law, the "interpretation of an insurance policy is a question of law" for the Court.

2  *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999).  "An insurance policy is but a contract,

3  and, like all other contracts it must be construed from the language used; when the terms are plain

4  and unambiguous, it is the duty of courts to enforce the agreement."  *Roug v. Ohio Sec. Ins. Co.*,

5  182 Cal. App. 3d 1030, 1035 (1986).  Here, the Policy's plain language excludes coverage for

6  losses that occur as a result of a virus.  (*See* Point I.A.1 *infra*.)

7      Insurance companies exclude certain causes of loss where the risk is difficult or

8  impossible to estimate and may be catastrophic—as it is for viruses, as was demonstrated by the

9  Severe Acute Respiratory Syndrome (SARS) outbreak in 2002-03 and is now shown again by the

10  COVID-19 pandemic.[2]  To impose liability retroactively for an excluded peril, as Plaintiff asks

11  the Court to do, would arbitrarily impose an inequitable burden on State Farm and other insurers

12  to cover a risk that their policies explicitly and unambiguously informed policyholders was not

13  covered and for which the insurers did not charge a premium.  Such a result would contravene

14  long-settled principles of California insurance law that a court may not "rewrite a policy to bind

15  the insurer to a risk that it did not contemplate and for which it has not been paid."  *Safeco Ins.*

16  *Co. v. Gilstrap*, 141 Cal. App. 3d 524, 533 (1983); *see also*, *e.g.*, *Certain Underwriters at Lloyd's*

17  *of London v. Super. Ct.*, 24 Cal. 4th 945, 968 (2001).  This retroactive assessment of liability

18  would also violate State Farm's due process rights and other constitutional guarantees.

19      In addition to the Virus Exclusion and the absence of the required "accidental direct

20  physical loss," Plaintiff's allegations do not establish coverage under the Endorsement's Civil

21  Authority and Loss of Income provisions.  Those provisions afford coverage for lost income under

22  specific factual circumstances that are not present under Plaintiff's allegations.  (*See* Point I.A.3-

23  4 *infra*.)  Coverage is also barred as a matter of law by the Policy's "Ordinance or Law," "Acts

24  or Decisions," and "Consequential Loss" Exclusions.  (*See* Point I.A.5 *infra*.)  Because there is

25  no coverage under the Policy, Plaintiff's breach of contract claim should be dismissed.  Further,

26

27

28  [2] Insurance policies exclude coverage for such potentially catastrophic hazards as "volcanic eruption," "nuclear hazard," "war," and "flood."  (*See* Policy at Ex. A-16 to A-18.)

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1   the other claims alleged in the First Amended Complaint fail as a matter of law because there is

2   no coverage for Plaintiff's purported losses and for other reasons.  (*See* Point I.B *infra*.)

3          For these reasons and those set forth below, Plaintiff's First Amended Complaint should

4   be dismissed for failure to state a claim.

5                              **POINTS AND AUTHORITIES**

6                              **LEGAL STANDARD**

7          To survive a Rule 12(b)(6) motion to dismiss, the "plaintiff must not merely conduct that

8   is conceivable but instead allege 'enough facts to state a claim to relief that is plausible on its

9   face.'" *Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1065 (N.D. Cal. 2018)

10  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "[f]actual allegations must

11  be enough to raise a right to relief above the speculative level, on the assumption that all the

12  allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  "A

13  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

14  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

15  556 U.S. 662, 678 (2009).  In considering this 12(b)(6) motion, the Court may take judicial notice

16  of documents that are referenced in the FAC and are central to Plaintiff's claims – (1) the Policy

17  and (2) the government orders at issue.[3]  *Petrovich v. Ocwen Loan Servicing, LLC*, 2016 WL

18  555959, at *3 (N.D. Cal. Feb. 12, 2016), *aff'd*, 716 F. App'x 614 (9th Cir. 2017).  The government

19  orders are also subject to judicial notice because they are matters of public record.  *Id.*

20  **I.     PLAINTIFF FAILS TO STATE A CLAIM**

21        **A.     Plaintiff's Breach Of Contract Claim Should Be Dismissed**

22          The California Supreme Court has held that under California law the "interpretation of an

23  insurance policy is a question of law." *Palmer*, 21 Cal. 4th at 1115; *see also McKinnon v. Truck

24  Ins. Exch.*, 31 Cal. 4th 635, 647 (2003); *Deere & Co. v. Allstate Ins. Co.*, 32 Cal. App. 5th 499,

25  513 (2019).  The terms of an insurance policy must be given their "ordinary and popular"

26

27

28  [3] True and correct copies of the following government orders are attached as exhibits to the
    Request for Judicial Notice: Ex. B – Santa Cruz Order; Ex. C – Executive Order N-33-20.

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 – Facsimile (510) 841-7776

1    meaning, and if the policy language is "clear and explicit," it governs.  *Palmer*, 21 Cal. 4th at

2    1115-17.  California courts stress that "'[i]t must be kept in mind that an insurer is free to select

3    the character of the risk it will assume' and an insurer 'has the right to limit the coverage of a

4    policy issued by it and when it has done so, the plain language of the limitation must be

5    respected.'"  *Maxum Indem. Co. v. Kaur*, 356 F. Supp. 3d 987, 999 (E.D. Cal. 2018) (quoting

6    *Fresno Econ. Imp. Used Cars, Inc. v. United States Fid. & Guar. Co.*, 76 Cal. App. 3d 272, 280

7    (1977)).  So, too, "a court may not rewrite a policy to bind an insurer to cover a risk which it did

8    not contemplate covering, and for which it was not paid to provide coverage."  *Baker v. Nat'l

9    Interstate Ins. Co.*, 180 Cal. App. 4th 1319, 1340 (2009).

10        To recover under an insurance policy, an insured has the initial burden of establishing

11   coverage under the terms of the policy.  *Mosley v. Pac. Specialty Ins. Co.*, 2020 WL 2669896, at

12   *3 (Cal. Ct. App. May 26, 2020).  If the insured proves coverage, then to avoid liability the insurer

13   must establish that the loss is within an exclusion.  *Id.*  Under the plain language of the Policy,

14   Plaintiff's claimed losses do not meet the Policy's terms of coverage and are subject to exclusions,

15   including the Policy's Virus Exclusion.  Plaintiff's breach of contract claim should thus be

16   dismissed as a matter of law.

   **1.      Coverage For Plaintiff's Alleged Losses Is Barred By The Virus
           Exclusion**

19       Plaintiff's claims are barred by the Policy's Virus Exclusion, which states:

20       **SECTION I – EXCLUSIONS**

21       2. We do not insure under any coverage for any loss caused by one or more of the
         following:

22       **i. Fungi, Virus or Bacteria**

23       (2) Virus, bacteria or other microorganism that induces or is capable of inducing
         physical distress, illness or disease; ….

25       (Policy at Ex. A-16 to A-17, ¶ 2.i(2).)

26   The heading for the exclusion conspicuously includes "Virus" in bold type.  The Policy's table of

27   contents also separately lists the "Fungi, Virus Or Bacteria" Exclusion.  (Policy at Ex. A-12.)

28   / / /

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

The Policy's Endorsement for "Loss of Income and Extra Expense," upon which Plaintiff sues, expressly incorporates Section I of the Policy, which requires a Covered Cause Of Loss in order for there to be coverage.  (Endorsement at Ex. A-61.)  Per the Policy's terms, Covered Cause Of Loss means **both** an "accidental direct physical loss to" Covered Property **and** that the loss is not excluded in the Policy's SECTION I – EXCLUSIONS.  (Policy at Ex. A-16.)  The Policy contains the Virus Exclusion, among others.  Since the "Loss of Income and Extra Expense" Endorsement requires a Covered Cause Of Loss (Endorsement at Ex. A-61.), and since there is no Covered Cause Of Loss because (*inter alia*) the Virus Exclusion applies, there is no coverage under the Endorsement.

The Virus Exclusion is unambiguous.  California courts evaluating similar policy exclusions barring coverage for losses caused by specified non-covered risks have found the provisions unambiguous and applied their plain meaning.  *See, e.g.*, *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 149 (1983); *see also De Bruyn v. Super. Ct.*, 158 Cal. App. 4th 1213, 1224 (2008); *Fireman's Fund Ins. Co. v. Super. Ct.*, 65 Cal. App. 4th 1205, 1212-13 (1997); *Maxum Indem. Co.*, 356 F. Supp. 3d at 1004.  In *De Bruyn*, the California Court of Appeal gave effect to a similarly-worded exclusion in an insurance policy that barred coverage for mold.  158 Cal. App. 4th at 1224.  In that case, a toilet overflowed while the homeowner was on vacation, resulting in mold damage throughout the covered property.  The applicable policy covered damage for "accidental discharge or overflow of water from ... plumbing" but specifically excluded coverage for mold.  *Id.* at 1222-23.  In holding that the mold exclusion barred coverage for mold "even when it results from a covered sudden and accidental discharge of water," the court stated that "an insurer may limit coverage ... as long as a reasonable insured would readily understand from the policy language which perils are covered and which are not." *Id.*  Because the mold exclusion "plainly and precisely communicat[ed] an excluded risk to a reasonable insured," there was no coverage under the policy.  *Id.* at 1224.[4]

---

[4] Other courts have similarly enforced the plain meaning of exclusions like the one here.  For example, in *Mount Vernon Fire Insurance Co. v. Adamson*, an insurer sought a declaratory

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1    Here, Plaintiff alleges entitlement to coverage under the Policy for losses that occurred as

2    a result of government orders issued "to reduce the person to person transmission of the virus and

3    reduce the contamination of frequently contacted surfaces with the virus." (FAC ¶ 19). The

4    COVID-19 virus is plainly at the root of these Orders. The Santa Cruz Order, cited in the FAC

5    (at ¶ 19), states that "[t]he intent of this Order is to ensure that the maximum number of people

6    self-isolate in their places of residence to the maximum extent feasible, while enabling essential

7    services to continue, to slow the spread of COVID-19 to the maximum extent possible." (Ex. B-

8    1). Likewise, the Governor's Executive Order, cited in the FAC (at ¶ 20), states that is was issued

9    "as a result of the threat of COVID-19." (Ex. C-1). Thus, Plaintiff's allegations and the

10   government orders they reference underscore the applicability of the Virus Exclusion.

11   Under the California Insurance Code, "[i]f a peril is specially excepted in a contract of

12   insurance and there is a loss which would not have occurred but for such peril, such loss is thereby

13   excepted even though the immediate cause of the loss was a peril which was not excepted." Cal.

14   Ins. Code § 532. The California Supreme Court has interpreted this provision to mean that "in

15   determining whether a loss is within an exception in a policy, where there is a concurrence of

16   different causes, the efficient cause—the one that sets others in motion—is the cause to which the

17   loss is to be attributed, though the other causes may follow it, and operate more immediately in

18   producing the disaster." *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 402 (1989).

19   As the stay-at-home orders cited by Plaintiff demonstrate, the efficient proximate cause

20   of those orders and of Plaintiff's losses is the COVID-19 virus. Put simply, no COVID-19 virus

21   means no stay-at-home orders to prevent its spread. The purpose of the efficient proximate cause

22   doctrine is "to bring about a fair result." *De Bruyn*, 158 Cal. App. 4th at 1224. "[A] covered peril

---

25   judgment that it was not required to indemnify a landlord under an insurance policy for a tenant's
     suit for damages allegedly caused by mold in the apartment. 2010 WL 3937336, at *1 (E.D. Va.
26   Sept. 15), *adopted*, 2010 WL 3937335 (E.D. Va. Oct. 6, 2010). The policy contained an exclusion
     barring coverage for "mold, fungus, bacteria or virus." *Id*. Finding the plain language of the
     exclusion to be unambiguous, the court held that the insurer had "no coverage obligation." *Id.* at
27   *6. Likewise, in *Alexis v. Southwood L.P.*, the court affirmed summary judgment for the insurer,
     holding that a "communicable disease exclusion" barred coverage for diseases transmitted from
28   exposure to raw sewage. 792 So. 2d 100, 102 (La. Ct. App. 2001).

---

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

usually can be asserted to exist somewhere in the chain of causation in cases involving multiple causes." *Garvey*, 48 Cal. 3d at 399.  If that covered peril is "a remote cause of the loss," or if (as here) "an excluded risk was the efficient proximate (meaning predominant) cause of the loss," a finding of coverage is impermissible as it would "effectively nullif[y] policy exclusions ... thereby essentially abrogating the limiting terms of insurance contracts in such cases." *Id.* at 399, 402-03. Accordingly, "the question [courts] must ask is whether the policy plainly and precisely communicate[s] an excluded risk to a reasonable insured." *De Bruyn*, 158 Cal. App. 4th at 1224. Where, as here, the exclusion plainly precludes coverage for losses caused by viruses, the efficient proximate cause doctrine bars Plaintiff's claims.

In asking this Court to find coverage, Plaintiff seeks to have the Court ignore the plain meaning of State Farm's Virus Exclusion.  Doing so would violate the settled principle of California law that "a court may not rewrite a policy to bind an insurer to cover a risk which it did not contemplate covering, and for which it was not paid to provide coverage." *Baker*, 180 Cal. App. 4th at 1340.  Moreover, the resulting imposition of retroactive liability under State Farm's insurance contracts would also contravene the fundamental protections of the United States and California Constitutions against denial of due process and taking of property without just compensation.[5]  State Farm's contract rights, as well as the funds that Plaintiff claims should be paid by State Farm for losses barred by the Virus Exclusion, are protected property interests for purposes of due process.  *See Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 492 n.29 (5th Cir. 2005).  The retroactive assessment of liability for such uncovered "losses" that State Farm never contracted to provide and for which the policyholders were not charged premiums would unfairly and arbitrarily force State Farm and other insurers to bear the huge costs of a public catastrophe.  Policyholders such as Plaintiff had no reasonable expectation of compensation for losses excluded by the Virus Exclusion in their policies, and State Farm had a settled expectation that it was not undertaking to insure such losses.  *See Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*, 66 Cal. App. 4th 1080, 1086 (1998) ("insurance premiums are

---

[5] *See* U.S. Const, amends. 5, 14; Cal. Const., art. I §§ 7, 19.

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1  commensurate with level of risk covered").  Interpreting insurance policies to cover excluded

2  COVID-19 claims would drain insurers' reserves set aside to cover other policyholders' covered

3  losses.  The drastic change in settled California law and the retroactive creation of liability under

4  State Farm's insurance contracts sought by Plaintiff would violate the basic guarantees of fairness

5  protected by the Due Process Clause.  *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467

6  U.S. 717, 733 (1984); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 & n.22 (1996).[6]

7          Such retroactive rewriting of State Farm's policies and imposition on State Farm of a

8  "disproportionate and severely retroactive burden" of liability would also contravene the

9  "fundamental principles of fairness underlying the Takings Clause[s]" of the United States and

10  California Constitutions.  *See E. Enters. v. Apfel*, 524 U.S. 498, 536-37 (1998) (invalidating

11  legislation that would impose far-reaching retroactive liability for health benefits on employers).[7]

12          For these reasons, the Court should hold that the Policy's Virus Exclusion excludes

13  Plaintiff's claimed losses from coverage.

## 2.     Even Without The Virus Exclusion, Plaintiff Does Not Allege Covered Losses

16          Even without the Virus Exclusion that bars its claims, Plaintiff does not state a claim for

17  coverage for the separate reason that its allegations are insufficient to establish the required

18  "accidental direct physical loss to" Covered Property.  (Policy at Ex. A-14; Endorsement at Ex.

19  A-61 to 62, ¶¶1.a., 2.a., 3b.).  Again, for there to be a Covered Cause Of Loss under the Policy, it

20  must **both** constitute "accidental direct physical loss to" Covered Property **and** it must not be

21  excluded.  Plaintiff's conclusory allegations point to no such "accidental direct physical loss to"

22  Covered Property or explain what it is.  Such unsupported assertions "are no more than

---

[6]  The fact that Plaintiff seeks a retroactive imposition of liability through the courts rather than through the legislature does not render their claims constitutionally permissible.  *See Gore*, 517 U.S. at 572 n.17 ("State power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute").

[7]  The Takings Clause "stands as a shield against the arbitrary use of government power," whether exercised through the courts or by the legislature.  *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980).

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1    conclusions" and therefore "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

2         Even if Plaintiff had alleged that the coronavirus was present at its property (which it has

3    not), that would not constitute "accidental direct physical loss." As the California Court of Appeal

4    has stated, the requirement of "physical loss" is "widely held to exclude alleged losses that are

5    intangible or incorporeal, and, thereby to preclude any claim against the property insurer when

6    the insured merely suffers a detrimental economic impact unaccompanied by a distinct,

7    demonstrable, physical alteration of the property." *MRI Healthcare Center,* 187 Cal. App. 4th at

8    778-79; *see also Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006)

9    (citation omitted); *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir.

10   2002); *Univ. Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 711 (E.D. Mich. 2010),

11   *aff'd sub nom., Univ. Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012).

12        In *MRI Healthcare.,* a healthcare provider needed to turn off its MRI machine to allow for

13   repairs of storm damage to its roof. 187 Cal. App. 4th at 769. Subsequently, the provider was

14   unable to get the machine to turn on again, resulting in loss of business income while the machine

15   was inoperable. The California Court of Appeal found no business interruption coverage under

16   a State Farm insurance policy containing relevant language identical to the Policy at issue here.

17   The Court held that "for loss to be covered, there must be a distinct, demonstrable, physical

18   alteration of the property .... some *external force* must have acted upon the insured property to

19   cause a *physical change* in the condition of the property, i.e., it must have been 'damaged' within

20   the common understanding of that term." *Id.* at 779-80 (emphasis in original). Because the MRI

21   machine did not suffer any "actual physical damage" in being turned off, there was no coverage

22   under the policy. *Id.*

23        The Court of Appeal's reasoning in *MRI Healthcare* was based on longstanding California

24   Supreme Court precedent that "[t]he type of perils or risks insured against in property insurance

25   contemplates 'fortuitous, active, physical forces such as lightning, wind, and explosion, which

26   bring about the loss.'" *Id.* at 781 (citing *Garvey*, 48 Cal. 3d at 406). Such occurrences, all of

27   which involve tangible damage, do not support the notion that a virus, which does not impair the

28

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1    structural integrity of property, constitutes direct physical loss.[8]

2        The holding of *MRI Healthcare* is also consistent with the Court of Appeal's earlier ruling

3    in *Ward General Insurance Services, Inc. v. Employers Fire Insurance Co.*, that loss of data stored

4    on an insured's computers could not constitute a direct physical loss because there was no

5    "damage to tangible property."  114 Cal. App. 4th 548, 556 (2003).  The court in *Ward* held that

6    "relying on the ordinary and popular sense of the words," a loss "does not qualify as a 'direct

7    physical loss,' *unless* [it] has a material existence, formed out of tangible matter, and is perceptible

8    to the sense of touch." *Id.*  (emphasis in original).  So, too, in the present case, Plaintiff's property

9    has suffered no "actual physical damage" due to government orders limiting how Plaintiff can see

10   patients.

11       Plaintiff's allegations establish that the insured property suffered no tangible damage.

12   Plaintiff admits that its business has continued to operate as an "Essential Business" throughout

13   the time period in question.  (FAC ¶¶ 21-22.)  What Plaintiff seeks coverage for is not direct

14   physical loss to property, but rather economic damages to its business.  Plaintiff alleges that

15   "Trinh, despite the challenges of substantial revenue reductions and with a reasonable expectation

16   of business insurance to facilitate their efforts, kept its doors open." (*Id.* ¶ 21.)  Plaintiff's request

17   for coverage "misconstrues the nature of the business interruption policy," the purpose of which

18   is to "indemnify the insured for loss caused by *the interruption of a* going *business consequent*

19   *upon the destruction of the building, plant, or parts thereof*."  *Ramada Inn Ramogreen, Inc. v.*

20   *Travelers Indem. Co. of Am.*, 835 F.2d 812, 814 (11th Cir. 1988) (emphasis added).

21       Other courts have likewise held that insurance coverage is unavailable where, as here, the

22

23   _____

24   [8]   In an analogous case, the district court applied this rule in rejecting a claim for business
     interruption losses due to the presence of mold and bacteria in a ventilation system, holding that
25   the insured had not shown "any structural or any other tangible damage to the insured property."
     *Univ. Image Prods.*, 703 F. Supp. 2d at 710.  The Sixth Circuit affirmed, concluding that mold
26   and bacteria in a building was not "direct physical loss" because that phrase "contemplates an
     actual change in the insured property" – *i.e.*, "tangible" damage.  *Univ. Image Prods., Inc. v. Fed.*
     *Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012).  Similarly, in *Port Authority of N.Y. & N.J.*, the
27   Third Circuit held that "the mere presence of asbestos" in a building was not "physical loss or
     damage" because that was not "'a distinct, demonstrable, physical alteration' of its structure."
28   311 F.3d at 235-36 (citation omitted).

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

plaintiff has suffered an adverse effect on revenue, rather than physical damage resulting in a suspension of business.  For instance, in *National Children's Expositions Corp. v. Anchor Ins. Co.*, 279 F.2d 428, 431 (2d Cir.1960), recovery was denied under the insured's use and occupancy policy for reduction in attendance due to a snowstorm, since its building was open.  Likewise, in *Keetch v. Mutual of Enumclaw Ins. Co.*, 831 P.2d 784, 786 (Wash. Ct. App. 1992), recovery was denied under the insured's business interruption policy where a hotel had reduced earnings but remained open after a volcanic eruption that covered the building in ash.

In addition, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014), flatly refutes Plaintiff's claim for coverage.  In *Newman*, the court held that a large scale power outage resulting in loss of access to the plaintiff's offices for several days did not constitute the requisite "direct physical loss or damage" to "trigger loss of business income and extra expense coverage." *Id.* at 333-34.  The court stated that "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the [insured] premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure ....  [T]he Court is unaware of authority supporting [plaintiff's] … argument that 'direct physical loss or damage' should be read to include to extend to the mere loss of use of a premises, where there has been no physical damage to such premises." *Id.*

Notably, the federal district court in New York just recently denied a preliminary injunction filed in another COVID-19 case where a magazine publisher sought to compel its insurer to pay its business interruption claim pending resolution of the lawsuit.  The court stated that the COVID-19 virus did not cause direct physical loss or damage to the property, as needed to trigger the subject policy's business interruption coverage.  The court concluded that business income loss for COVID-19 "is just not what's covered under these insurance policies." *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 1:20-cv-3311 (S.D.N.Y.), ECF No. 24-1, May 14, 2020 Hr'g Tr. at 15:12-16.

Nor does it suffice that Plaintiff's alleged losses were the result of government stay-at-home "orders." (*E.g.*, FAC ¶¶ 19-20.)  As in *Source Food Technology v. U.S. Fidelity & Guaranty*

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

*Co.*, 465 F.3d 834 (8th Cir. 2006), where there was a loss of use of the insured property due to a government embargo order, "the policy's use of the word 'to' in the policy language 'direct physical loss *to* property' is significant." *Id.* at 838 (emphasis in original).  Plaintiff's "argument might be stronger if the policy's language included the word 'of' rather than 'to,' as in 'direct physical loss of property' or even 'direct loss of property.'  But these phrases are not found in the policy."  *Id.*  "[T]he policy's use of the words 'to property' further undermines [Plaintiff's] argument" that coverage is triggered under the Policy.  *Id.*  The breach of contract claim should be dismissed.

### 3.    The Policy's Civil Authority Provision Is Inapplicable

Plaintiff alleges it is entitled to coverage under the Civil Authority provision in the Endorsement to the Policy.  (FAC ¶¶ 13-14, 22, 29).  Under the plain terms of the Policy and its Endorsement,[9] Plaintiff has not pled facts that meet the requisite elements to trigger the Civil Authority provision, which provides coverage for loss of income caused where damage to other property causes a civil authority to prohibit access to the insured property, causing loss of income to the insured. (Endorsement at Ex. A-62, ¶ 4.)

The requirements for Civil Authority coverage include (1) "damage to property other than property at the described premises"; (2) caused "by a Covered Cause Of Loss"[10]; and (3) "a civil authority … prohibits access to the described premises, provided that"; (4) "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property"; and (5) "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or … to enable a civil authority to have unimpeded access to the damaged

---

[9] The Endorsement expressly incorporates the provisions of the Property coverage provided in the Policy, stating:  "The coverage provided by this endorsement is subject to the provisions of SECTION I — PROPERTY, except as provided below" and "All other policy provisions apply." (Endorsement at Ex. A-61 & A-64.)

[10] *See* Policy, Section I – Covered Causes Of Loss (Ex. A-16) (requiring "accidental direct physical loss" that is not "Excluded in SECTION I –EXCLUSIONS").

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1    property."  (Endorsement at Ex. A-62, ¶ 4)  Plaintiff fails to allege facts supporting these

2    requirements.  Plaintiff does not allege damage to a nearby property.  Moreover, even if Plaintiff

3    could claim that a nearby property sustained the same purported "damage" that it alleges its

4    property sustained, that damage is not "accidental direct physical loss" and is not caused by a

5    "Covered Cause Of Loss" as required by the Civil Authority provision.  Rather, Plaintiff

6    affirmatively alleges an excluded cause of loss: the COVID-19 coronavirus.  Plaintiff alleges it

7    sustained losses "due to the stay-at-home ordinances effected statewide" caused by the "SARS

8    CoV-19 ('COVID-19')." (FAC. ¶¶ 1, 15).  These orders were issued "reduce the person to person

9    transmission of the virus" (*id.* ¶ 19), to "slow the spread of COVID-19," (Santa Cruz Ord. at Ex.

10   B-1), and to "mitigate the impact of COVID-19" (Exec. Or. N-33-20 at Ex. C-2, ¶ 1.).  As

11   discussed above, the Policy states:  "We do not insure under any coverage for any loss which

12   would not have occurred in the absence of ... Virus." (Policy at Ex. A-16 to 17, ¶ 2.i.(2).)  The

13   Virus Exclusion bars coverage.

14        Plaintiff has failed to allege the hallmark requirement for coverage under the Civil

15   Authority provision.  *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th

16   Cir. 2011); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co.*,

17   2007 WL 2489711, at *3 (M.D. La. Aug. 29, 2007).  "[C]ivil authority coverage is intended to

18   apply to situations where access to an insured's property is prevented or prohibited by an order

19   of civil authority issued as a direct result of physical damage to other premises in the proximity

20   of the insured's property."  *Dickie Brennan*, 636 F.3d at 686-87 (citations omitted); *see United

21   Airlines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 131 (2d Cir. 2006); *Syufy Enters. v. Home

22   Ins. Co.*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995); *S. Tex. Med. Clinics, P.A. v. CNA

23   Fin. Corp.*, 2008 WL 450012, at *9 (S.D. Tex. Feb. 15, 2008); *Paradies Shops, Inc. v. Hartford

24   Fire Ins. Co.*, 2004 WL 5704715, at *6-7 (N.D. Ga. Dec. 15, 2004).  For example, coverage might

25   apply where a civil authority orders an insured building closed for safety reasons while an adjacent

26   building that was damaged by fire is being repaired.  *See Syufy Enters.*, 1995 WL 129229, at *2

27   n.1; *United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 352 (S.D.N.Y. 2005),

28   *aff'd*, 439 F.3d 128 (2d Cir. 2006).  A "causal link" must exist between prior actual damage to

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

nearby premises "and the action by a civil authority." *S. Tex. Med. Clinics*, 2008 WL 450012, at *10; *see Syufy Enters.*, 1995 WL 129229, at *2; *see also Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, at *6 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*, 2011 WL 13214381 at *6 (E.D. Tex. Mar. 30), *adopted*, 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011).  No such situation is alleged here.

Plaintiff fails to plead the requisite causal link between actual damage to nearby premises and the prohibition on access.  None of the orders precludes access to the insured premises because of alleged damage to other property within the area of the insured premises.  Rather, the orders expressly permit access to Plaintiff's premises.  Plaintiff "owns, operates, manages, and controls [a] dentistry practice located in Watsonville, California." (FAC ¶ 3).  Services of "dentists" are deemed "Essential Activities" and are "exempt[ed]" under the government orders. (Santa Cruz Ordinance, at Ex. B-3, ¶¶ 10(a), (b)); *see also* FAC ¶ 21.) As Plaintiff acknowledges, it "remained open and continued to provide essential emergency or urgent dental care to patients." (FAC ¶ 1).

A causal relationship is also absent when civil action is taken due to fear of future harm, rather than prior actual physical damage.  Thus, when construing similar policy language, courts have rejected civil authority coverage where businesses had losses due to preventive governmental measures, such as pre-hurricane evacuations or the threat of terrorist attacks, before any physical damage occurred.  *See Dickie Brennan*, 636 F.3d at 686–87; *S. Tex. Med. Clinics*, 2008 WL 450012, at *10; *Not Home Alone, Inc.*, 2011 WL 13214381, at *6-7; *United Air Lines*, 439 F.3d at 134-35; *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010).  Here, because the government orders were issued to "slow the spread of [the] COVID-19" virus (Santa Cruz Ord. at Ex. B-1); *see also* Exec. Or. N-33-20 at Ex. C-2, ¶ 1), and not because of prior actual "physical damage," "no coverage" exists for "loss of revenue because of business interruption."  *Dickie Brennan*, 636 F.3d at 687; *see also Syufy Enters.*, 1995 WL 129229, at *2.

Moreover, the provision has additional requirements, including that "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority … as a result of

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

the damage," where the described premises are within that area (but no more than a mile away). (Endorsement at Ex. A-62, ¶ 4.a(1).)  Plaintiff does not so allege.  In fact, "[a]ccess to the area immediately surrounding the damaged property" is not "prohibited."  Beyond the lack of physical barricades, the government orders allow access to healthcare operations, hospitals, clinics, gas stations, grocery stores, banks, hardware stores, laundromats, and auto-supply and auto-repair services, among others.  (Santa Cruz Ordinance at Ex. B-4 to 5, ¶ 10(f.).)  Under the orders, "[a]ll Essential Business are strongly encouraged to remain open." (*Id.* at Ex. B-2, ¶ 3.)  In sum, because Plaintiff fails to allege the factual predicates for coverage under the Civil Authority provision, its claim for breach fails as a matter of law.

### 4.   The Policy's "Loss of Income" Coverage Is Inapplicabl*e*

Plaintiff also alleges it is entitled to coverage under the Loss of Income Coverage provided by the Endorsement.  (FAC ¶ 11, 14.)  Beyond being barred by the Virus Exclusion, Plaintiff is not entitled to Loss of Income coverage because it does not meet the conditions for coverage. Such coverage is provided for a suspension of operations caused by "accidental direct physical loss to property."  (Endorsement at Ex. A-61.)  But as shown above, Plaintiff's allegations are insufficient to constitute "accidental direct physical loss to property."  (*See* Point I.A.2 *supra.*)

Under Plaintiff's allegations, the other requirements for "Loss of Income" coverage are also not satisfied.  Not only does the Policy provide that State Farm "do[es] not insure ***under any coverage*** for any loss caused by one or more of the following … Virus" (Policy at Ex. A-16 to 17, ¶ 2.i.(2) (emphasis added)), but the Loss of Income provision also expressly requires that the loss "must be caused by a Covered Cause Of Loss."  (Endorsement at Ex. A-61).  Under the plain terms of the Policy, a virus is not a "Covered Cause Of Loss."  (Policy at Ex. A-16 to A-17.)

Further, to the extent that Plaintiff's suspension of business was caused by the government orders, it is not a covered loss.  Those orders are not, and did not cause, the required "accidental direct physical loss to property."  Moreover, under the Policy's "Acts or Decisions" Exclusion, "[c]onduct, acts or decisions … by a governmental body" do not constitute a covered loss, and if such acts cause an excluded loss (such as a virus), the loss remains excluded.  (Policy at Ex. A-19, ¶ 3.b.); *see also* Point I.A.5 *infra.*

Loss of Income coverage applies to loss of income sustained due to the necessary suspension of operations "during the 'period of restoration,'" the period when the property is "repaired, rebuilt or replaced with reasonable speed and similar quality" or until "business is resumed at a new permanent location." (Endorsement at Ex. A-61, ¶ 1.a & Ex. A-64, ¶6.)  Here, there is no period of restoration.  There are no allegations that the coronavirus necessitated repairs, replacement, or rebuilding, or that new permanent locations are being sought.  Loss of income coverage is not available for a suspension of operations where, as here, a shutdown is due to government order.

### 5.   Additional Policy Exclusions Bar Plaintiff's Claims

Coverage is also barred by the "Ordinance or Law," the "Acts or Decisions," and the "Consequential Loss" Exclusions.  Each of these Exclusions takes the loss at issue outside the Policy's definition of Covered Cause Of Loss and precludes coverage.

The "Ordinance or Law" Exclusion bars coverage for any loss due to "[t]he enforcement of any ordinance or law" "[r]egulating the ... use ... of any property," and "applies … even if the property has not been damaged." (Policy, Exclusions at Ex. A-18, ¶ j.)  Under such an exclusion, "costs ... incurred due to the enforcement" of certain restrictions imposed by governmental officials on the "use" of property are "excluded."  *Bahama Bay II Condo. Ass'n, Inc. v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1281–82 (M.D. Fla. 2019); *see also MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192 (10th Cir. 2009); *Reichert v. State Farm Gen. Ins. Co.*, 212 Cal. App. 4th 1543, 1547-1548 (2012) (applying an Ordinance or Law Exclusion).

The "Acts or Decisions" Exclusion bars coverage for any loss caused by "[c]onduct, acts or decisions … of any person, group, organization, or governmental body whether intentional, wrongful, negligent or without fault." (Policy, Exclusions Ex. A-19, ¶ 3.b.)  Thus, where a claimed loss is caused by the acts or decisions of a governmental authority, the loss is excluded from coverage.  For example, in *Cytopath Biopsy Laboratory, Inc. v. U.S. Fidelity & Guaranty Co.*, 774 N.Y.S.2d 710 (App. Div. 2004), the "Acts or Decisions" exclusion in the plaintiff's policy barred coverage for alleged business interruption losses because "the real losses claimed herein resulted from refusal by the [governmental] authorities to permit resumption of operations

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

until proper permits were obtained and a more acceptable ventilation system was installed." *Id.* at 711; *see also Landmark Hosp., LLC v. Cont'l Cas., Co.*, 2002 WL 34440929, at *2 (C.D. Cal. July 2, 2002) (applying Acts or Decisions exclusion); *Worldwide Sorbent Prod., Inc. v. Invensys Sys., Inc.*, 2014 WL 12597394, at *11 (E.D. Tex. July 31, 2014) (same).

Here, because acts by governmental officials allegedly caused Plaintiff's losses by putting restrictions on the use of Plaintiff's property (FAC ¶¶ 14, 22, 29), the Ordinance or Law Exclusion and the Acts or Decisions Exclusion are each implicated. Either exclusion bars coverage.[11]

Additionally, the "Consequential Loss" Exclusion bars coverage for "loss whether consisting of, or directly and immediately caused by … [d]elay, loss of use or loss of market." (Policy, Exclusions Ex. A-18, ¶ 2.k.) The Loss of Income and Extra Expense endorsement also excludes "any other consequential loss." (Endorsement, Exclusions at Ex. A-63, ¶ 2.) Courts have upheld similar consequential loss exclusions where an insured alleged that "its damages were caused by its inability to access" its property and "did not contend that its [property] had been physically damaged in any way." *Petroterminal de Panama, S.A. v. Houston Cas. Co.*, 114 F. Supp. 3d 152, 160 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 46 (2d Cir. 2016). Plaintiff alleges that it sustained "substantial revenue reductions" (*i.e.*, lost profits) due to its reduction in normal operations due to the "Santa Cruz Ordinance and State of California Order." (FAC ¶¶ 21-22.) Such loss of income claims are quintessential consequential loss, *see Bartram, LLC v. Landmark Am. Ins. Co.*, 864 F. Supp. 2d 1229, 1240 (N.D. Fla. 2012), and are barred by the Policy's exclusion for loss caused by loss of use. *See Petroterminal de Panama, S.A. v. Houston Cas. Co.*, 659 F. App'x 46, 51 (2d Cir. 2016).

For these reasons, Plaintiff's breach of contract claim should be dismissed.

**B.    Plaintiff's Remaining Claims Also Fail As A Matter Of Law**

Because there is no coverage for Plaintiff's alleged losses under the Policy (*see* Point I.A *supra*), each of the FAC's other causes of action also fails as a matter of law. Since State Farm

---

[11] To the extent that Plaintiff contends that governmental officials' acts resulted in the "seizure" of Plaintiff's property, the Governmental Action exclusion would also bar Plaintiff's claims. (Policy, Exclusions at Ex. A-18, ¶ m.)

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1  did not withhold any benefits due under the Policy, Plaintiff's Second Cause of Action for Breach

2  of the Covenant of Good Faith and Fair Dealing is not actionable as a matter of law.  *Love v. Fire*

3  *Ins. Exchange*, 221 Cal. App. 3d 1136, 1151-52 (1990) ("[w]here benefits are withheld for proper

4  cause, there is no breach of the implied covenant").  Likewise, Plaintiff's Third Cause of Action

5  for Bad Faith Denial fails because it also requires the withholding of benefits due under the Policy.

6  *See id.* at 1152 ("a bad faith claim cannot be maintained unless policy benefits are due in accord

7  with the policy"); *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.

8  App. 4th 335, 347 (2001) (rejecting bad faith claim against insurer as a matter of law).

9  Moreover, Plaintiff's Fourth Cause of Action for declaratory judgment should be

10  dismissed because it is rendered redundant by the First Cause of Action for breach of contract.

11  Where, as here, the "determination of [a] breach of contract claim [will] resolve any question

12  regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a

13  companion declaratory relief claim is appropriate." *StreamCast Networks, Inc. v. IBIS LLC*, 2006

14  WL 5720345, at *4 (C.D. Cal. May 2, 2006) (brackets in original).

15  Plaintiff's Fifth Cause of Action for unjust enrichment fails as a matter of law for multiple

16  reasons.  First, it is based on the erroneous allegation that "Defendants were unjustly enriched

17  when Defendants offered insurance coverage through their policy and appear to provide

18  coverages for loss of business income due to Civil Authority and civil ordinance, but instead

19  Defendants refused to fulfill their financial obligation to Plaintiff and denied coverage."  (FAC ¶

20  58.)  As shown above, Plaintiff's claim was properly denied because there is no coverage under

21  the Policy.  (*See* Point I.A *supra*.)  Second, the unjust enrichment claim fails for the separate

22  reason that under California law "unjust enrichment is an action in quasi-contract, which does not

23  lie when an enforceable, binding agreement"—here the insurance contract—"exists defining the

24  rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th

25  Cir. 1996).

26  Plaintiff's Sixth Cause of Action for "violation" of section 17200 of the California

27  Business & Professionals Code ("Unfair Competition Law" or ""UCL") should be dismissed

28  because it is based on Plaintiff's incorrect contention that State Farm improperly denied Plaintiff's

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

insurance claim.  (*See*, *e.g.*, FAC ¶ 63 ("Defendants have violated the UCL's prohibition against engaging in an unlawful act or practice by, *inter alia*, denying Plaintiff's claim for coverage and such action violates California state laws"); *id.* ¶ 66 ("Defendants engaged in the unfair business practice of denying business interruption insurance claims even though Defendants' policy language covers such losses ....").  As discussed above, Plaintiff's insurance claim was properly denied. (*See* Point I.A *supra.*)  Further, to the extent Plaintiff attempts to allege that State Farm's purported conduct was a "fraudulent business act or practice" (*e.g.*, FAC ¶ 68), Plaintiff's allegations are wholly conclusory and fail to meet the exacting particularity requirements of Federal Rule of Civil Procedure 9(b).  To satisfy Rule 9(b)'s particularity requirement, an "[a]verment[] of fraud must be accompanied by 'the who, what, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1116 (9th Cir. 2003).  For instance, "[t]he time, place and manner of each act of fraud must be alleged." *Sun Savings & Loan Ass'n v. Diedorff*, 825 F.2d 187, 196 (9th Cir. 1987).  Plaintiff fails to meet these standards.

Finally, Plaintiff's Seventh Cause of Action for injunctive relief under section 17200 of the UCL fails because it is an attempt to seek money damages for State Farm's purported breach of contract.  (*See* FAC ¶ 71 (seeking injunction "requiring Defendants to pay the monies owed to Plaintiff").)  Such damages are not available under the UCL.  *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1184 (2012). Moreover, such relief is not permissible injunctive relief because an available remedy at law exists.  As the court explained in *McAdam v. State National Insurance Co.*, 2012 WL 4364655 (S.D. Cal. Sept. 24, 2012), "[i]njunctive relief under Cal. Bus. & Prof. Code [section] 17200 is not available if the plaintiff has other available legal remedies." *Id.* at *2 (citing *Prudential Home Mort. Co. v. Super. Ct.*, 66 Cal. App. 4th 1236, 1249-50 (1998)).  The court in *McAdam* court stated that "courts have dismissed § 17200 claims in insurance coverage cases where the plaintiff's proper remedy is to sue for breach of contract to recover any benefits that are due under the polic[y]." *Id.*  The court in *McAdam* cited *Stewart v. Life Ins. Co. of North Am.*, 388 F. Supp. 2d 1138, 1144 (E.D. Cal. 2005), which explained that the plaintiff sought payment of policy benefits, and therefore that the breach of contract claim would provide any benefits due to the plaintiff.  *Id.*  Likewise, in *Allstate Insurance Co. v. Barnett*, the court

dismissed a § 17200 claim because the plaintiff had "an adequate remedy at law, i.e., he can sue for breach of contract and recover damages."  2011 WL 2415383, at *9 (N.D. Cal. June 15, 2011). Here, because Plaintiff has an adequate remedy at law in the form of its breach of contract claim, Plaintiff is precluded from pursuing injunctive relief under section 17200 of the UCL, and its injunctive relief claim should be dismissed.  *See McAdam*, 2012 WL 4364655, at *2-3.

## CONCLUSION

For the foregoing reasons, State Farm respectfully requests the Court to grant its motion to dismiss Plaintiff's First Amended Complaint for failure to state a claim.

DATED: July 6, 2020

By: /s/ *Sandra E. Stone*
_____
Sandra E. Stone

Attorneys for Defendant
STATE FARM GENERAL INSURANCE
COMPANY

OF COUNSEL:
DOUGLAS W. DUNHAM
BERT L. WOLFF

DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036
(212) 698-3500 (Telephone)
(212) 698-3599 (Fax)
douglas.dunham@dechert.com
bert.wolff@dechert.com

Pacific Law Partners, LLP
2000 Powell Street, Ste. 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776