SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
Sanjiv N. Singh, Esq. (SBN 193525)
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 389-2255
Email: ssingh@sanjivnsingh.com

INDRAJANA LAW GROUP, A PROFESSIONAL LAW CORPORATION
Michael B. Indrajana, Esq. (SBN 258329)
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 597-0928
Email: michael@indrajana.com

Attorneys for Plaintiff KAREN TRINH, DDS., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KAREN TRINH, DDS., INC.,** a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**STATE FARM GENERAL INSURANCE COMPANY**, an Illinois Corporation doing business in California; AND DOES 1 TO 50, INCLUSIVE.<br><br>Defendants. | Case No.: 5:20-cv-04265-BLF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>**[Fed. R. Civ. Pro. 12(b)(6)]**<br><br>Date:       November 12, 2020<br>Time:       9:00 A.M.<br>Location:   280 South Street<br>             San Jose, CA 95113<br>             Courtroom 3 – 4th floor<br>Judge:      Hon. Beth Labson Freeman |

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

   A.   Brief Procedural History. ..................................................................................... 2

   B.   Statement of Facts and Specific Rebuttals. ......................................................... 2

      1.   Plaintiff Trinh's Background. ........................................................................... 2

      2.   The Government Orders and Allegations of Physical Loss Due to Human Droplets. ................ 2

      3.   Human Droplets, Which May or May Not Contain the Virus, Are the Material at Issue Causing Physical Damage. .................................................................................................. 3

      4.   The Civil Ordinances Are Directed to Slow Down the Spread Of COVID-19 by Controlling the Spread of Human Droplets. ................................................................................ 4

III.    LEGAL STANDARD FOR RULE 12(B)(6) ANALYSIS OF COVERAGE CLAIMS ................ 4

   A.   The Court Should Accept All of the Allegations Made in the SAC as True, and Construe the Pleadings in the Light Most Favorable to Plaintiff; and Alternatively Grant Liberal Leave for Plaintiff to Amend the Complaint. ...................................................................................... 5

   B.   California Insurance Contract Interpretation Requires the Court to Interpret the Policy Language Broadly to Afford the Greatest Possible Protection to the Insured and to Interpret Exclusions Narrowly Against the Insurer. .......................................................................... 5

IV.     ARGUMENT .......................................................................................................... 6

   A.   Plaintiff's Allegations of Human Droplets Which May or May Not Contain Virus Particles as The Cause Of Damage Satisfies The "Accidental Direct Physical Loss" Requirement Which Must Be Broadly Interpreted to Afford Greatest Possible Protection to Plaintiff. ................................ 7

      1.   State Farm's Policy "Accidental Direct Physical Loss" Requirement as Plead. ................ 7

      2.   The Legal Standard for Interpreting the Direct Physical Loss Requirement. ................... 7

      3.   Applying Applicable Law, Plaintiff Satisfies the Direct Physical Loss Requirements of the State Farm Policy. .......................................................................................... 9

PLAINTIFF'S OPPOSITION TO DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM
CASE NO.: 5:20-CV-04265-BLF

4.    State Farm's Other Cited Authorities Are Inapposite, Distinguishable, and Should Not Be Relied Upon to Grant This Premature Rule 12(b)(6) Motion. ........................................................ 10

5.    Physical Damage Under the State Farm Policy May Also Be Satisfied by Loss of Use. .......... 10

B.    The Virus Exclusion Does Not Apply to Human Droplets, and to the Extent It Does Apply, It Must Be Construed Narrowly Against State Farm. ................................................................................ 12

1.    Interpretation I: The Virus Exclusion Does Not Apply to Human Droplets and Therefore Is Not Applicable to the Facts Alleged in the SAC. ............................................................................ 12

2.    Interpretation II: Even If the Virus Exclusion Applies Indirectly to Human Droplets That Contain the Virus, It Still Does not Apply to Human Droplets That Do Not Contain the Virus but Are Still a Covered Cause of Loss. ........................................................................................... 13

3.    Interpretation III: Wholesale Application of the Virus Exclusion Is Inconsistent With the Facts of the SAC as Plead, and Moreover California Requires Concurrent Causation Analysis Which Cannot Be Resolved at the Pleading Stage. ........................................................................................ 14

4.    Even if the Virus Exclusion Applies, There Is a Clearly Competing Covered Loss (in the Form of Droplets) Which Must Be Analyzed Under California's Concurrent Causation Doctrine Which Cannot Be Meaningfully or Fairly Done at the Pleading Stage. ........................................................ 15

5.    The Virus Exclusion Clause Is Ambiguous Under California Law When There Are at Least Two Reasonable Interpretations of the Clause Which Creates a Triable Question of Fact Not Resolvable at the Pleading Stage. ........................................................................................................ 16

6.    Recent Lower Court Decisions on Other COVID-19 Litigation Are Distinguishable and Do Not Address Human Droplets as the Covered Cause of Loss. ............................................................ 17

C.    Plaintiff Has Sufficiently Alleged Facts That Trigger Civil Authority Coverage by Alleging Human Droplets, With or Without Virus Particles, as a Covered Cause of Loss. ............................... 19

D.    The Policy's "Loss of Income," "Extended Loss of Income," and "Extra Expense" Coverages Are Applicable Because the Virus Exclusion Clause Does Not Apply. ............................................... 21

E.    Additional Policy Exclusions Do Not Bar Plaintiff's Claims. .................................................. 21

1.    Ordinance or Law Exclusion Is Not a Basis for 12(b)(6) Dismissal. ........................................ 21

- ii -

PLAINTIFF'S OPPOSITION TO DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
CASE NO.: 5:20-CV-04265-BLF

2.     Acts or Decisions Exclusion Is Not a Basis for 12(b)(6) Dismissal. .......................................... 22

3.     The Consequential Loss Exclusion Is Not a Basis for 12(b)(6) Dismissal. .............................. 23

F.     Plaintiff Has Sufficiently Pled Factual Allegations for Each of Its Causes of Action to Survive the 12(b)(6) Motion. .................................................................................................................. 23

1.     Counts 1 Through 4 – Breach of Contract, Breach of Covenant of Implied Faith and Fair Dealing, Bad Faith Denial, and Declaratory Relief. ........................................................................ 23

2.     Counts 5 – Unjust Enrichment. ...................................................................................... 23

G.     Counts 6 and 7 – Violation of Cal. Bus. & Prof. Code § 17200 (UCL) and Injunctive Relief Under § 17200. ............................................................................................................................. 23

V.     CONCLUSION ........................................................................................................................ 25

- iii -

PLAINTIFF'S OPPOSITION TO DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM
CASE NO.: 5:20-CV-04265-BLF

## TABLE OF AUTHORITIES

### FEDERAL CASES

*10E, LLC. v. Travelers Indemnity Co. of Connecticut,* 2:20-cv-04418-SVW-AS, 2020 WL 5095587 (C. D. Cal. Sept. 2, 2020) ............................................................................................................ 18

*Aberin v. Am. Honda Motor Co., Inc.*, 2018 U.S. Dist. LEXIS 49731 (N.D. Cal. Mar. 26, 2018) .......... 24

*Adkins v. Comcast Corp.*, 2017 U.S. Dist. LEXIS 137881 (N.D. Cal. Aug. 1, 2017) ............................. 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................ 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 5

*Diesel Barbershop, LLC. v. State Farm Lloyds,* 2020 WL 4724305 (W.D. Tex. Aug 13, 2020) ............ 18

*Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60 (1992) ...................................................................... 24

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002) .......................................................................... 5

*Johnson v. Fed. Home Loan Mortg. Corp.,* 793 F.3d 1005 (9th Cir. 2015) ........................................... 5

*Mama Jo's, Inc. v. Sparta Insurance Co.*, No 18-12887, 2020 WL 4782369 (11th Cir. Aug. 18, 2020)  10

*Manpower Inc. v. Ins. Co. of the State of Pa.*, No. 08C0085, 2009 WL 3738099 (E.D. Wis. Nov. 3, 2009) ..................................................................................................................................... 8

*Manzarek v. Marine*, 519 F.3d 1025 (9th Cir. 2008) ................................................................ 5, 6, 12, 13

*Mudpie, Inc. v. Travelers Casualty Insurance Company of America,* 20-cv-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept 14, 2020) ............................................................................... 8, 18

*Nat'l Org. for Women v. Scheidler*, 510 U.S. 249 (1994) ...................................................................... 5

*Polich v. Burlington N., Inc.*, 942 F.2d 1467 (9th Cir. 1991) ................................................................. 5

*Scottsdale Ins. Co. v. Hudson Specialty Ins. Co.*, No. 15-cv-02896-HSG (N.D. Cal. Mar. 25, 2016) ....... 5

*Social Life Magazine, Inc. v. Sentinel Ins. Co.,* 1:20-cv-3311 (S.D.N.Y., May 14, 2020) ...................... 18

*Studio 417, Inc. v. Cincinnati Insurance Co.*, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) ............... 19

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:17-cv-04908-AB-KSx), 2018 WL 3829767 ................................................................................................................. 8

PLAINTIFF'S OPPOSITION TO DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM
CASE NO.: 5:20-CV-04265-BLF

*Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) ..................................................................................................................... 18

*Vicuña v. Alexia Foods, Inc.*, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. April 27, 2012)........................ 24

### STATE CASES

*AIU Ins. Co. v. Sup. Ct. (FMC Corp)*, 51 C3d 807 (1990) ----------------------------------------------------- 10

*Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 10 Cal.Rptr.2d 538 P.2d 545 (1992) ------------------ 11

*Borg v. Transamerica Ins. Co.,* 47 Cal. App. 4th 448, 54 Cal. Rptr. 2d 811 (1996) ------------------------- 11

*Garvey v. State Farm,* 48 Cal.3d 395 (1989)------------------------------------------------------------------------- 15

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, 20-258-CB-C30 (Mich. Cir. Ct., Ingham City)-------------- 18

*Hendrickson v. Zurich American Ins. Co. of Ill.,* 72 Cal. App. 4th 1084, (1999) ----------------------------- 11

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (Cal. Ct. App. 2009) --------------------------------------- 24

*Julian v. Hartford Underwriter Ins. Co.*, 35 C4th 747 (2005)------------------------------------------------------ 16

*Korea Supply Co. v. Lockheed Martin Corp,* 29 Cal. 4th 1134 (2003)------------------------------------------- 24

*Lyons v. Fire Ins. Exch.*, Cal.App.4th 880 (2008) ---------------------------------------------------------------7, 22

*MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205 (2003) ------------------------------------------------------- 5, 6

*Mastellone v. Lightning Rod Mutual Insurance Co.,* 884 N.E.2d 1130 (Ohio App. 2008)---------------- 10

*Montrose Chem Corp. v. Superior Court*, 861 P.2d 1153, 1160 (1993)------------------------------------------ 6

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766 (2010)------- 8

*Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W.Va. 1998)------------------------------------------- 8

*Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800 (1982)-----------------------------------------------------------6, 17

*Rose's 1, LLC. v. Erie Ins. Exch.*, No 2020 CA 002424B (D.C. Super Ct., Aug. 6, 2020)---------------- 18

*Sabella v. Wisler,* 59 Cal.2d 21 (1963)----------------------------------------------------------------------------- 15

*Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal.4th 758 (2001) --------------------------------------------------- 5

*Shade Foods, Inc., v. Innovative Products Sales*, 78 Cal.App.4th 847 (2000) --------------------------------- 6

*Stamm Theatres, Inc., v. Hartford Casualty Ins. Co,* 93 Cal.App.4th 531 (2001) -----------------------6, 17

*Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal.App.5th 729 (Cal. Ct. App. 2018) ----------------9, 11

- v -

PLAINTIFF'S OPPOSITION TO DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM
CASE NO.: 5:20-CV-04265-BLF

*Vardanyan v. AMCO Ins. Co.*, 243 CA4th 779 (2015) ------------------------------------------------- 16, 19

*Western Fire Insurance Co. v. First Presbyterian Church,* 165 Colo. 34, 437 P.2d 52 (1968)------------ 8

**S**TATUTES

Cal. Civ. Code § 1636 ------------------------------------------------------------------------------------- 6

Cal. Civ. Code § 1641 -----------------------------------------------------------------------------------7, 21

Cal. Ins. Code § 530 -------------------------------------------------------------------------------------16

Cal. Ins. Code § 532 ----------------------------------------------------------------------------------- 15, 16

Cal. Ins. Code § 533 -------------------------------------------------------------------------------------19

**R**ULES

Fed. R. Civ. P. 12(b)(6)------------------------------------------------------------------------------- 5

PLAINTIFF'S OPPOSITION TO DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM
CASE NO.: 5:20-CV-04265-BLF

## I. INTRODUCTION

The suspension of business operations caused by the unprecedented COVID-19 pandemic was the exact kind of loss insurers marketed they would cover to potential purchasers of their policies. But as the pandemic unfolded and local ordinances suspended partially or fully operations at tens of thousands of businesses, insurance companies, including Defendant State Farm General Insurance Company ("State Farm"), balked. Though its policy was an all-risk policy and expressly provided civil ordinance coverage, State Farm began an immediate campaign to block consumers from even tendering coverage, and then summarily denied coverage. In a similar fashion, State Farm wishes to now prematurely deny Plaintiff's ability to have these historic questions of coverage litigated fairly with evidence before a trier of fact. They would instead have the Court discount the plain language of their policies, the ambiguities of their own making, and bedrock principles of concurrent causation – and essentially dismiss Plaintiff's claims without proper consideration of evidence.

Indeed, Plaintiff's Second Amended Complaint ("SAC")  now contains detailed factual allegations supported by publicly available scientific evidence highlighting the role of human droplets as distinct and separate from virus particles, and highlighting the role of these two substances in causing damage and prompting the issuance of government ordinances. The allegations as amended are not "artful pleading", but in fact now reflect a good faith pleading of what Plaintiff believes to be the accurate physiologic and physical description as to what damage was actually at issue, and what damage-causing agents (human droplets, only some of which contain virus particles, vs. virus particles) truly required the civil ordinances. The droplets were targeted by the civil ordinances because governments believed that reducing exposure to the droplets would reduce the rate of virus transmission because some of the droplets, whether on surfaces or aerosolized, may contain the virus.

As such, this Court should deny State Farm's 12(b)(6) Motion. As plead by the SAC: 1) the presence of human droplets, which may contain virus particles, creates a Covered Cause of Loss; and 2) the Policy's Virus Exclusion Clause and other exclusion clauses either do not apply or should be analyzed according to California's concurrent causation doctrine. In summary, the Court should deny these 12(b)(6) motions and exercise prudence and restraint, allowing triers of facts to properly wrestle

with the important scientific and evidentiary questions present in the newly evolving area of COVID-19 law.

## II.  BACKGROUND

**A.  Brief Procedural History.**

Plaintiff Karen Trinh, DDS., Inc., ("Trinh") filed the First Amended Complaint in the Superior Court of California, County of Santa Cruz, on May 22, 2020. State Farm removed the case to this Court on June 26, 2020. ECF No. 1. On August 24, 2020, per stipulation approved by this Court, Plaintiff filed its Second Amended Complaint to incorporate the latest scientific evidence relating to the distinction between human droplets and virus particles, a critical distinction which Plaintiff and its multidisciplinary team (which includes a physician/litigator who continues to work at the front line of the pandemic) believes was overlooked in some of the early motion practice across the country, and to also address recent opinions issued by other federal courts related to the COVID-19 business insurance coverage litigation. See Second Amended Complaint ("SAC"). On September 5th, 2020, State Farm filed a new Rule 12(b)(6) Motion to Dismiss ("Motion") in response to Plaintiff's Second Amended Complaint. ECF. No. 27.

**B.  Statement of Facts and Specific Rebuttals.**

Relevant portions of the SAC are summarized here. State Farm's Motion fails to properly characterize the material allegations.

**1.  Plaintiff Trinh's Background.**

As Plaintiff has pled in its SAC, Trinh is a dental practice located in Watsonville, California, owned by Dr. Karen Trinh, DDS. SAC at 4:22-26. Prior to the pandemic, Trinh employed around 10 people and was serving around 50 to 60 patients per day, five days per week. *Id*. at 4:23-24.

**2.  The Government Orders and Allegations of Physical Loss Due to Human Droplets.**

State Farm incorrectly alleges and concludes in its brief that Plaintiff is not entitled to Civil Authority Coverage because Plaintiff failed to allege damage to a nearby property. Motion at 17:13-14. This is incorrect. Plaintiff did in fact allege physical damage and risk of direct physical loss at its property and surrounding property, and that said damage reduced the ability to conduct their work. Specifically, Plaintiff alleged that, "the presence of possibly infected respiratory droplets, saliva, or

airborne particles, constitutes physical damage to Plaintiff's property or surrounding property." SAC at 17:13-17.; see infra at 3:20-3:27; SAC at 12:5-10.

### 3. Human Droplets, Which May or May Not Contain the Virus, Are the Material at Issue Causing Physical Damage.

In fact, the SAC now makes a clear distinction between the virus and the human droplets, and that they are not the same matter. SAC at 12:3-20. First and foremost, the SAC expressly alleges that the droplets are not viruses, that a virus or other pathogen may travel in said droplets, and that human droplets may be the primary cause of the damage or losses in question. *Id.* at 12:21-13:18. The SAC expressly pleads that State Farm's all-risk policy exclusions are silent on droplets. *Id.* at 11:1-2. Second, the SAC clearly alleges that the particle size of a virus is approximately 0.125 μm, while the average human droplet size is 5 μm. *Id.* at 12:3-20. Proportionately, average human droplets are 40 times larger than a virus particle. *Id.* Third, the SAC alleges that multiple droplets can coalesce together and thus have their own physical presence, and the coalescence of multiple droplets may form a liquid layer that is visible to the naked eye. *Id.* Indeed, the SAC also alleges that some saliva droplets may be large enough to be seen by the naked eye. *Id.* As such, the SAC further alleges that droplets have actual physical presence, and they alter and damage surfaces where they are present. *Id.* Plaintiff's SAC is grounded by pleadings expressly relying on reasoned scientific evidence from credible sources, including the WHO, CDC, NIMH, PNAS, and other peer-reviewed scientific publication sources. *Id.* at Fn. 1-3, and also at 11:16-12:2, 13:1-21, 13:19-14:3.

Defendant suggests that the SAC is conclusory as to whether or not droplets cause damage. This is simply not the case. The SAC expressly pleads that droplets are contaminants that can land on a wide range of surfaces due to the accidental or fortuitous acts of sneezing, coughing, or mouth-to-hand to surface-to-nose-to-hand to surface contamination. SAC at 12:3-20. In addition, the SAC clearly identifies the droplets as rendering those surfaces as unsatisfactory by pleading that after such surfaces are contaminated, they have to be cleaned. *Id*. at 12:6-11. The SAC then clearly pleads that the daily damage caused by non-infectious droplets (as contaminants) caused them to become a focus of governmental pandemic measures: "When the pandemic hit, the human droplets became a focus of concern because they can possibly carry the virus." *Id*. at 12:8-9.

State Farm also seems to believe that only the human droplets that contain the virus (which as plead in 13:20-14:3 of the SAC may be the minority of droplets as there are conflicting views on the amount of virus present in droplets on surfaces) are hazardous and cause damage. Motion at 7:26-8:4. However, this misses or mischaracterizes the critical point that the SAC alleged, which is that droplets themselves have caused damage to surfaces such as doorknobs, handrails, utensils, tables, chairs, car seats, bus seats, benches etc. before the pandemic and were the subject of "daily cleaning protocol." SAC at 12:3-8. The pandemic changed the scope of the impact of the droplets and the damage they could cause by linking them specifically to the *risk* of containing the COVID-19 virus. *Id.* at 12:3-20. Because of this concern, governments tried to control the spread of the virus by controlling exposure to droplets—it was no longer enough to have "daily cleaning protocols" but instead governments wished to restrict human passage to any areas where they might come in contact with human droplets.

### 4. The Civil Ordinances Are Directed to Slow Down the Spread Of COVID-19 by Controlling the Spread of Human Droplets.

As the SAC pleads, the County of Santa Cruz and State of California shut down or reduced business activity and issued stay-at-home orders. SAC at 14:20-24, 15:1-15. Consistent with the Order, the SAC alleges that the reason for the issuance of the orders was the need to reduce the spread and dissemination of the droplets that might contain the virus. *Id.* at 14:13-15. The Orders do not seek to eradicate the virus itself, but rather to slow its transmission. As such, they are targeting the physical presence of human droplets, not just the virus itself. *Id.* at 18:5-9. The SAC further alleges that the Santa Cruz and State of California Emergency Health Orders, in an unprecedented manner, required necessary measures to keep people at home and off the streets and out of areas of public gatherings, and thereby crippled the major source of revenue (in-person visits) for these Essential Businesses like Plaintiff. *Id.* at 15:7-15. As a direct and proximate result of this Order, access to businesses like Trinh, including Essential Businesses like Trinh, have been specifically prohibited except for urgent care, emergency visits, and special medical needs. *Id.* at 15:10-12.

### III. LEGAL STANDARD FOR RULE 12(B)(6) ANALYSIS OF COVERAGE CLAIMS

In analyzing Defendant's Motion, the Court should not deviate from the overarching Rule 12(b)(6) standards which call for viewing the pleadings in the light most favorable to Plaintiff and should take particular care to not dismiss these historic cases prematurely. As such, it is worth

reviewing first the relevant legal standards for Rule 12(b)(6) analysis and seminal California law,

including guidance from the California Supreme Court, on interpretation of insurance contracts.

**A. The Court Should Accept All of the Allegations Made in the SAC as True, and Construe the Pleadings in the Light Most Favorable to Plaintiff; and Alternatively Grant Liberal Leave for Plaintiff to Amend the Complaint.**

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Johnson v. Fed. Home Loan Mortg.*

*Corp.,* 793 F.3d 1005, 1008 (9th Cir. 2015).

Further, for the purposes of this analysis, a court "accept[s] factual allegations in the complaint

as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*

*v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court "presume[s] that

general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for*

*Women v. Scheidler*, 510 U.S. 249, 256 (1994). See *Scottsdale Ins. Co. v. Hudson Specialty Ins. Co.*, No.

15-cv-02896-HSG, at *6 (N.D. Cal. Mar. 25, 2016).

Finally, in the event that the Court grants the motion to dismiss, the Court should allow broad

discretion for Plaintiff to amend its complaint to cure any defects in the factual allegations. *Manzarek v.*

*Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) (""Denial of leave to amend is reviewed for an abuse of

discretion." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002). `"Dismissal without leave to

amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any

amendment.'" *Id.* (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).")

**B. California Insurance Contract Interpretation Requires the Court to Interpret the Policy Language Broadly to Afford the Greatest Possible Protection to the Insured and to Interpret Exclusions Narrowly Against the Insurer.**

Interpretation of insurance contracts under California law requires this Court to employ general

principles of contract interpretation. *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008), citing

*MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1212 (2003); *Safeco Ins. Co. of Am. v. Robert S.*, 26

Cal.4th 758, 110 (2001). Further, under California law, the Court needs to give effect to the "mutual

intention of the parties at the time the contract is formed. *Manzarek*, 519 F.3d at 1031; see Cal. Civ.

Code § 1636. California law requires that grants of coverage be interpreted broadly to afford the greatest possible protection to the insured, while exclusions are interpreted narrowly and against the insurer. *Shade Foods, Inc., v. Innovative Products Sales*, 78 Cal.App.4th 847, 867 (2000); *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 808 (1982). Thus, if a policy provision is capable *of two or more reasonable interpretations*, then it is considered ambiguous. *Stamm Theatres, Inc., v. Hartford Casualty Ins. Co,* 93 Cal.App.4th 531, 538 (2001). (emphasis added). Ambiguities must be resolved against an insurance company and in favor of the insured. *Reserve Ins. Co.,* 30 Cal.3d at 807-808.

To further illustrate this principle, the 9th Circuit Court in *Manzarek* held that an insurer must defend its insured "if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or *if the complaint might be amended to give rise to a liability that would be covered under the policy." Manzarek,* 539 F.3d at 1031, citing *Montrose Chem Corp. v. Superior Court*, 861 P.2d 1153 (1993) (emphasis added). Indeed, the Court may even consider facts outside of the complaint, when they reveal a *possibility* that the claim may be covered by the policy (emphasis added). *Id.*

Defendant stated throughout their brief that under California law, unambiguous language controls. See e.g. Motion at 5:22-24, 12:19-22. However, under *Mackinnon,* the California Supreme Court has rejected this view and cautioned against the literal reading of a word when the dictionary meaning of the word is so broad that it renders the meaning absurd in view of the "ordinary and popular" sense of the word. *Mackinnon,* 73 P.3d at 1208.

## IV. ARGUMENT

Plaintiff's SAC alleges that the virus and human droplets are two separate physical materials that are remarkably different in size (i.e., the human droplets are on average 40 times larger than the typical virus particle) and effect, and that the policy is silent on droplets. SAC at 12:3-20, 11:1-2. As such, the direct physical loss requirement of the State Farm policy is satisfied either by the pleading on the human droplets or the virus or both, and to the extent there is a virus exclusion, it either does not apply to the droplet, or if it does, the virus is not the efficient proximate cause of the covered losses in question, including most notably the loss of revenue caused by the civil ordinances which targeted human droplets

by shutting down or limiting travel to businesses[1]. Other purported exclusions such as the consequential

loss and civil ordinance exclusion fail for the same reasons.

**A. Plaintiff's Allegations of Human Droplets Which May or May Not Contain Virus Particles as The Cause Of Damage Satisfies The "Accidental Direct Physical Loss" Requirement Which Must Be Broadly Interpreted to Afford Greatest Possible Protection to Plaintiff.**

In view of the Policy language and relevant case law, Plaintiff's allegations satisfy the direct

physical loss or physical damage requirement for a Covered Cause of Loss.

**1. State Farm's Policy "Accidental Direct Physical Loss" Requirement as Plead.**

The State Farm Policy, as plead in the SAC, provides for coverage (under a section entitled

"COVERAGE") as follows:

> When a Limit Of Insurance is shown in the Declarations for that type of property as described under **Coverage A – Buildings, Coverage B – Business Personal Property**, or both, we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under **SECTION I — COVERED CAUSES OF LOSS**.

SAC at 6:10-14.

**2. The Legal Standard for Interpreting the Direct Physical Loss Requirement.**

The law governing and defining the aforementioned "accidental direct physical loss" is case

specific and significantly more flexible and reasonable to the insured than State Farm acknowledges.

California law requires every word in a policy be given a meaning. Cal. Civ. Code § 1641 ("[t]he whole

of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each

clause helping to interpret one other."); *Lyons v. Fire Ins. Exch.*, Cal.App.4th 880, 886 (2008) (insurance

policy must be read so "that all words in a contract are to be given meaning").

Defendant argues that, in order to establish "a direct physical loss of" property, Plaintiff must

allege losses that are intangible or incorporeal, and thereby preclude any claim against the property

insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct,

demonstrable, physical alteration of the property. Motion at 10:23-28, 11:1-2, citing *MRI Healthcare*

---

[1] Plaintiff's Opposition Brief will address physical damage and physical loss **first** as they are predicate

concepts for Covered Cause of Loss analysis, and the Virus Exclusion Clause and other exclusions

cannot be analyzed without first establishing that a Covered Cause of Loss is triggered.

1   *Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010). However, this

2   rigid, draconian interpretation has been rejected by California Courts as being too broad. Just recently,

3   the Northern District of California rejected this interpretation of *MRI Healthcare Center* in *Mudpie,*

4   *Inc. v. Travelers Casualty Insurance Company of America,* 20-cv-03213-JST, 2020 WL 5525171 (N.D.

5   Cal. 2020) ("*Mudpie*"), citing to *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No.

6   2:17-cv-04908-AB-KSx), 2018 WL 3829767, at *3-4 ("*Total Intermodal*"). Both the *Mudpie* and

7   *Intermodal* courts concluded that the phrase "direct physical loss **to**" in *MRI Healthcare Center* should

8   be construed differently than "direct physical loss **of**" in order to properly apply the bedrock principle

9   that every word be given a meaning. *Mudpie,* 2020 WL 5525171 at *4,  quoting *Total Intermodal,* 2018

10  WL 3829767, at *4. The Court in *Mudpie* reasoned that "to interpret 'physical loss of' as requiring

11  'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating

12  a black-letter cannon of contract interpretation – that every word be given a meaning. *Mudpie,* 2020

13  WL 5525171 at *3. Thus, the *Mudpie* Court, applying *Total Intermodal*, found that the language of this

14  provision, alone, does not require a "physical alteration of the property" or "a *physical change* in

15  condition of the property." *Id.* Instead, the court in *Mudpie* held that there needs to be allegations of an

16  intervening physical force which "made the premises uninhabitable or entirely unusable" in order to

17  establish a "direct physical loss of property" under the policy. *See Mudpie at p. 7-8; see also Manpower*

18  *Inc. v. Ins. Co. of the State of Pa.*, No. 08C0085, 2009 WL 3738099, at *6 (E.D. Wis. Nov. 3, 2009)

19  (finding that the insured's inability to access its property was a direct physical loss where the loss "was

20  caused by a physical event—the [building] collapse—which created a physical barrier between the

21  insured and its property"); *see also Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 5, 17 (W.Va.

22  1998) (finding that "[l]osses covered by the policy, including those rendering the insured property

23  unusable or uninhabitable, may exist in the absence of structural damage to the insured property" when

24  a rockfall made plaintiffs' homes uninhabitable); *see also Western Fire Insurance Co. v. First*

25  *Presbyterian Church,* 165 Colo. 34, 437 P.2d 52, 54-55 (1968) (finding that the direct physical loss

26  resulting from the 'accumulation of gasoline around and under the church building,' which made

27  further use of the building highly dangerous when the insured, acting upon the orders of the fire

28  department, closed the church building because gasoline had infiltrated the soil underneath it).

It is also not correct to say, axiomatically, that economic loss cannot constitute damage. Indeed, a more flexible and insured-protective approach to policy interpretation was adopted by the California Court of Appeal in *Thee Sombrero, Inc. v. Scottsdale Ins. Co.* when it noted that: "The correct principle, then is *not* that economic losses, by definition do not constitute property damage. [citations omitted] . . . Rather, the correct principle is that losses that are *exclusively* economic, without any accompanying physical damage or loss of use of tangible property, do not constitute property damage." *Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal.App.5th 729, 739 (Cal. Ct. App. 2018).

### 3. Applying Applicable Law, Plaintiff Satisfies the Direct Physical Loss Requirements of the State Farm Policy.

Consistent with the Northern District's recent ruling in *Mudpie* and recent application of *Western Fire* in *Mudpie*, and consistent with *Total Intermodal*, *Manpower* and *Murray*, the SAC alleges physical damage from either the droplets (which may or may not contain the virus) and/or from the virus particles themselves. SAC at 11:16-12:2 (distinguishing between saliva droplets, respiratory droplets, and the virus itself, all of which may be in the air or on surfaces and causing damage to the premises and surrounding areas), 12:11-15 (droplets in air or on surfaces). The SAC pleads in great detail precisely how droplets, which may or may not contain virus particles, can land on, alter, and occupy physical surfaces, requiring cleaning protocols and removal. SAC at 12:3-23, 13:1-19, Fn. 2, (incorporated figure showing the various manners in which droplets and/or virus can damage surfaces and the surrounding air). The SAC expressly pleads that it is the presence of the human droplets and/or virus particles and the perception of the droplets' harmful potential to *carry* the virus, even though the virus may be only in a small fraction of the droplets, that triggered the civil ordinances and/or caused damage at the scheduled premises or surrounding premises. SAC at 14:6-13, (tying droplet and virus damage to the orders limiting access to the scheduled premises), SAC at 15:7-12 (connecting the virus or droplet damage to physical accessibility), SAC at 15:16-17:23, (pleading in significant detail over several pages the risk of direct physical loss from asymptomatic individuals shedding droplets and/or virus particles, citing the WHO descriptions of the various modalities of damage through spread of droplets and resulting possible virus transmission (SAC at 16:5-23), and specifically articulating the role of human beings in carrying the droplets from location to location and why the ordinances needed to control their travel, ingress and egress from properties and regions (SAC at 17:22-23, 18:1-4)).

### 4. State Farm's Other Cited Authorities Are Inapposite, Distinguishable, and Should Not Be Relied Upon to Grant This Premature Rule 12(b)(6) Motion.

Defendant argues in its Motion that simply because "human droplets" make surfaces "essentially dirty," this is not a physical loss. Motion at 14:19-26. However, each of the cases cited by Defendant is distinguishable. For example, in *Mama Jo's, Inc. v. Sparta Insurance Co.*, No 18-12887, 2020 WL 4782369, at *1 (11th Cir. Aug. 18, 2020), the Court granted a motion to dismiss finding that dust and debris from nearby construction work did not constitute physical damage to scheduled premises. In view of the recent *Mudpie* decision, the Northern District would not find *Mama Jo's* persuasive as the Northern District has now stated that virus particles, transmitted through droplets, are "no less a physical force than the accumulation of gasoline in *Western Fire* or the ammonia release [which] physically transformed the air in [another case]." *Mudpie*, 2020 WL 5525171 at *5, FN 7. Defendant's citations to *Universal Image Productions, Inc. v. Federal Insurance Co.,* 475 F. App'x 569, 573 (6th Cir. 2012) (finding that mold and bacteria in a building did not amount to "direct physical loss") and *Mastellone v. Lightning Rod Mutual Insurance Co.,* 884 N.E.2d 1130, 1144 (Ohio App. 2008) (finding that mold staining did not constitute physical damage) are not dispositive here in light of the Northern District's recent analysis in *Mudpie*. Besides the fact that *Mudpie* now serves to clarify the Northern District's view on appropriate pleading of direct physical loss damage, it is also worth noting that the purported damage from mold, bacteria, or mold staining in *Universal* and *Mastellone* did not result in actual loss of use, whereas in this case, the damage from virus particles and droplets resulted in actual loss of access to the scheduled premises and surrounding areas as plead in the SAC.  See SAC at 17:1-21; see *infra* at Section IV(A-5).

Finally, Defendant argues that cost for cleaning is not covered by the policy when they argued that cleaning is not contemplated under the policy. Motion at 14:16-18. However, California courts have ruled differently. For example, governmental claims against an insured for pollution clean-up and other "response" costs under CERCLA are "damages" within the meaning of the policy, whether the claim is for remedial costs (paying for clean-up) or mitigation costs (preventing further injury once damage has already occurred). See *AIU Ins. Co. v. Sup. Ct. (FMC Corp)*, 51 C3d 807, 824-825 (1990). At the very least, this is a triable question of fact and law that cannot be disposed of at the 12(b)(6) pleading stage.

### 5. Physical Damage Under the State Farm Policy May Also Be Satisfied by Loss of Use.

The State Farm Policy provides the following definition for "Property Damage":

1

2

**a.** Physical injury to tangible property, **including all resulting loss of use** [emphasis added] of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

3

4

5

**b. Loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property** [emphasis added]. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

6

SAC, Exhibit A at p. 49.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

It is well established California law that insurance contracts "must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract". See *Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). As such, the previously cited definition of Covered Cause of Loss (see SAC at 6:10-14) and the discussion of direct physical loss or physical damage must be informed by this definition of property damage which permits "loss of use of tangible property that is not physically injured or destroyed." Applicable case law supports this analysis as well. See e.g. *Borg v. Transamerica Ins. Co.,* 47 Cal. App. 4th 448, 456–57, 54 Cal. Rptr. 2d 811, 816 (1996) (where the Court holds that loss of use may include loss of use of tangible property not otherwise physically damaged); see also *Hendrickson v. Zurich American Ins. Co. of Ill.,* 72 Cal. App. 4th 1084, 1090-1091 (1999) (where Court followed *Borg* in finding damage from loss of use of strawberry fields without actual physical damage); see also *Thee Sombrero, Inc. v. Scottsdale Ins. Co.,* 28 Cal. App. 5th 729, 736-738 (2018) (where the Court rejected the insurer's contention that an amendment to a Conditional Use Permit (CUP) was not a loss of use of tangible property as a result of a shooting in a nightclub and the Court observed, "If your leased apartment was rendered uninhabitable by some noxious stench, you would conclude that you had lost the use of tangible property; and if a lawyer said no, actually you had merely lost the use of your intangible lease, you would goggle in disbelief.")

24

25

26

27

Applying *Borg*, *Hendrickson*, *Thee Sombrero*, and other similar cases in California and other jurisdictions, this Court may also find that Plaintiff satisfies the physical damage requirement by virtue of the pleadings which state clearly that as a result of the concern for droplets and virus particles rendering physical surfaces and enclosed spaces as sites for virus transmission, Plaintiff suffered the

28

same kind of physical damage or property damage by loss of use of its own premises.  SAC at 14:14-18:9.

Therefore, because the SAC adequately pleads risk of direct physical loss sufficiently to trigger coverage under the State Farm policy and with sufficient particularity to satisfy Rule 12(b)(6) and California insurance law standards, the Court should deny Defendant's motion to dismiss on grounds that physical damage or loss was not satisfactorily plead.

### B.   The Virus Exclusion Does Not Apply to Human Droplets, and to the Extent It Does Apply, It Must Be Construed Narrowly Against State Farm.

State Farm argues that the Virus Exclusion Clause unambiguously bars the entirety of Plaintiff's claims. Motion at 5:3-11. The relevant portion of the Virus Exclusion Clause is plead in the SAC at 10:2-26. As alleged in the SAC, the policy does not define, address, or exclude losses or physical damage or alteration related to human droplets (either respiratory or saliva, both large and small). *Id.* at 11:1-2. Under California law, the Virus Exclusion Clause needs to be interpreted narrowly and against the insurer. *Manzarek*, 519 F.3d at 1032, supra. Against this backdrop, there are several possible interpretative scenarios based on how narrowly the Court construes the reading of the Virus Exclusion Clause, all of which favor coverage and all of which do not favor dismissal at a pleading stage.

### 1.   Interpretation I: The Virus Exclusion Does Not Apply to Human Droplets and Therefore Is Not Applicable to the Facts Alleged in the SAC.

As discussed above, California law requires any exclusion language to be construed narrowly against the insurer. *Manzarek,* 519 F.3d. at 1032, supra. Thus, if the Court takes this approach to narrowly interpret the Clause, where the human droplet is the Covered Cause of Loss, it would then follow that the Virus Exclusion Clause does not apply because as alleged in the SAC, the Virus Exclusion Clause does not define, address, or exclude losses or physical damage, or alteration related to saliva and/or respiratory droplets. SAC at 10:2-26, 11:1-2. The SAC in fact pleads in significant detail the distinct and primary causative role of droplets in causing the damage in question. *Id.* at 11:16-24, 12:1-20, 17:1-21. This reading is consistent with the plain and ordinary reading of the clause under California Law without further need of interpretation. *Manzarek*, 519 F.3d at 1031.

**2. Interpretation II: Even If the Virus Exclusion Applies Indirectly to Human Droplets That Contain the Virus, It Still Does not Apply to Human Droplets That Do Not Contain the Virus but Are Still a Covered Cause of Loss.**

State Farm argues in its brief that the Virus Exclusion Clause unambiguously bars coverage for all of Plaintiff's claims against them because a Florida District Court dismissed a COVID-19 business interruption case because the "the plain language" of the virus exclusion barred coverage for "loss or damage" caused 'directly or indirectly' by '[a]ny virus, bacterium or other microorganism that induces or capable of inducing physical distress, illness or disease.'" Motion at 6:11-17, quoting *Martinez v. Allied Ins. Co. of Am.,* No. 2:20-cv-00401-JLB-NPM (M.D. Fla., Sept. 2, 2020). Once again, this interpretation needs to be construed narrowly and against State Farm. *Manzarek,* 519 F.3d *at 1032,* supra. Appropriate analysis of the Virus Exclusion Clause requires a separate analysis between "directly caused by a virus," and "indirectly caused by a virus" in the context of the facts alleged in the SAC. In other words, the Virus Exclusion Clause needs to be construed in the context of the role of human droplets as expressly alleged in the SAC.

As to the "directly caused by a virus" clause, the SAC alleges that the presence of human droplets, not the virus, may constitute the direct physical harm, physical damage, and physical loss to Plaintiff's property or surrounding property. SAC at 11:16-24, 12:1-20, 17:1-21. The SAC specifically points to the physical size and physiologic difference between the droplets and the virus. *Id*. at 12:11-20. Furthermore, the SAC also alleges that the droplets are not viruses, but a virus or a pathogen can sometimes travel in said droplets. *Id*. at 12:1-2. The SAC also alleges that the physical dimension of the average droplet is approximately 40 times the size of the average virus particle. *Id*. at 12:11-20. Thus, the SAC has alleged that the droplets are entirely separate material from the virus. Construing the clause narrowly and against State Farm, the clause "directly caused by a virus" cannot apply when the SAC alleges human droplets as the Covered Cause of Loss because the SAC has alleged sufficient facts to distinguish the virus and the human droplets. As discussed previously, because the Virus Exclusion Clause is silent on human droplets and the clause needs to be construed narrowly and against the insurer, then the clause "directly caused by a virus" cannot apply when the SAC alleges physical damage or loss caused directly by the human droplets. ***Which particle (virus or droplet) caused the loss in these unprecedented cases should not be adjudicated at the pleading stage but should be debated by experts before a trier of fact.***

With respect to the "indirectly caused by a virus" clause, State Farm attempts to argue that the human droplets that contain the virus may be excluded under the literal reading of the language. However, this reading does not account for human droplets that do not contain the virus. As alleged in the SAC, the droplets are not viruses, but significant viruses and other pathogens can sometimes (not always) travel in said droplets. SAC at 11:16-24, 12:1-2. The SAC also specifically alleges that the human droplets became a focus of concern because they can possibly carry the virus. SAC at 11:16-24, 12:1-20. As such, the Virus Exclusion Clause still fails to address the human droplets that do not contain the virus but still cause physical loss or damage when said droplets are present on the surface of Plaintiff's property and/or surrounding premises. These droplets, as plead, still cause damage because there is no way to differentiate droplets from infected people (asymptomatic and pre-symptomatic) from the vast majority of droplets from non-infected people which do not contain the virus. SAC at 15:16-24, 16:1-4. Construing the Clause narrowly and against State Farm, the Clause would not apply to this larger class of droplets which create loss but do not carry the virus.

3. **Interpretation III: Wholesale Application of the Virus Exclusion Is Inconsistent With the Facts of the SAC as Plead, and Moreover California Requires Concurrent Causation Analysis Which Cannot Be Resolved at the Pleading Stage.**

Defendant State Farm made an incorrect conclusory argument that COVID-19 is the efficient proximate cause of Plaintiff's alleged loss, and therefore all losses due to COVID-19 fall squarely within the Virus Exclusion Clause. Motion at 8:13-16. Under this argument, any losses, directly or indirectly caused by the COVID-19 virus, are excluded by the virus exclusion. *Id.* at 9: 2-3. Even before addressing efficient proximate cause analysis, which is discussed in the next section, there are numerous fundamental problems with this interpretation which make this interpretation unreasonable and overbroad in a manner squarely disfavored by both Rule 12(b)(6) standards of review and California law.

First, this "COVID-19 as the sole efficient proximate cause" interpretation fails to account for the SAC allegations that only some droplets have the virus but *all* droplets damage surfaces by occupying space with physical altering (and indeed contaminating) properties or at least pose a risk of damaging surfaces. SAC at 13:20-22, 14:1-3, 17:5-23, 18:1-9. Surprisingly, State Farm has not considered or addressed the scientific facts unique to human droplets as alleged in the SAC. Motion at 7:26-28, 8:1-4, Fn. 3. Taking the facts alleged as true, it is implausible for the virus to exist

independently outside of the human droplet and, as plead in the SAC, viruses do not independently cause the physical damage or physical loss to the property.[2] SAC at 14:7-18:9.

Second, State Farm's interpretation runs afoul of standards requiring the narrowest possible interpretation of the Virus Exclusion Clause against State Farm. State Farm's interpretation would mean that if the human droplets, as alleged in the SAC, fall somewhere (indeed anywhere) in the chain of causation that stems from the COVID-19 pandemic, then the Virus Exclusion Clause applies. In the context of Plaintiff's SAC, this interpretation is simply inapposite. While State Farm's interpretation may be consistent in a tenuous and theoretical sense with the literal and plain meaning of "indirectly caused" by the virus, *MacKinnon*, supra, has expressly warned about literal interpretations used to preclude coverage and/or prematurely dismiss insured complaints.

### 4. Even if the Virus Exclusion Applies, There Is a Clearly Competing Covered Loss (in the Form of Droplets) Which Must Be Analyzed Under California's Concurrent Causation Doctrine Which Cannot Be Meaningfully or Fairly Done at the Pleading Stage.

Under Cal. Ins. Code § 532, "[i]f a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted." As such, efficient proximate cause analysis must be applied when a non-excluded peril and an excluded peril combine to cause a loss. In such cases, so long as the non-excluded peril is the "Efficient Proximate Cause," there is coverage for the loss. This is so even though an excluded peril concurrently contributed to producing the loss. The "Efficient Proximate Cause" is also referred to as the "Predominate Cause."  Under *Sabella v. Wisler,* 59 Cal.2d 21, 31-32 (1963) and as further clarified in *Garvey v. State Farm,* 48 Cal.3d 395 (1989), the "Predominant Cause" is not automatically the "triggering" cause: "[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, *the efficient cause – the one that sets others in motion – is the cause to which the loss is to be attributed*, though other causes

---

[2] In fact, this incorrect assumption (which ignores the role of human droplets as pled in the SAC) has been the foundation of the recent string of case decisions granting various insurers' motion to dismiss. Motion at 12:7-15:17; Cf. SAC at 11:16-13:18, 17:1-21.

may follow it, and operate more immediately in producing the disaster." *Sabella,* 59 Cal.2d 21 at 31-32. (Emphasis added).) The *Garvey* Court noted that *"Sabella . . .* sets forth a workable rule of coverage that provides a fair result within the reasonable expectations of both the insured and the insurer whenever there exists a causal or dependent relationship between covered and excluded perils." *Garvey,* 48 Cal.3d 395 at 404. Where the policy provides coverage for a specified peril, if the specified peril is the predominant cause of the loss, the loss is covered regardless of whether there were excluded contributing causes. *Vardanyan v. AMCO Ins. Co.,* 243 CA4th 779, 792 (2015).

Further, under California law, a virus exclusion clause that excludes coverage where the excluded peril "contributes in any way" to the loss may be deemed illusory because it "suggests [that] the insurer could deny coverage for a loss caused by 1% of an excluded peril and 99% by a covered peril." *Julian v. Hartford Underwriter Ins. Co.,* 35 C4th 747, 759 (2005). In other words, denial of coverage where the excluded peril is only a remote cause of a loss caused by a combination of covered and excluded perils would circumvent the efficient proximate cause doctrine and thus violate Cal. Ins. Code §§ 530 and 532. *Id. at 759.*

Applying *Sabella*, *Garvey*, *Julian* and the progeny of cases which have historically applied California's statutorily-required concurrent causation analysis, the SAC alleges that human droplets are the main source of the loss, particularly when cities and counties issued the emergency stay-at-home orders to reduce contact with the human droplets to prevent asymptomatic transmissions and pre-symptomatic transmissions even with debate as to how many virus particles were in fact present in the much larger, more substantial droplets. SAC at 12:3-18:9. Further, the SAC also alleges that with or without the virus particles, the human droplets, which are 40 times as large as a virus particle, have physically changed and physically damaged Plaintiff's property and surrounding property. *Id.* at 17:13-18:9. Accepting the allegations in the SAC as true as plead, the human droplets are the efficient proximate cause of the loss and not the virus, and the Court must accept that as true and allow discovery to proceed and must allow for a trier of fact to ultimately adjudicate on this important question.

### 5. The Virus Exclusion Clause Is Ambiguous Under California Law When There Are at Least Two Reasonable Interpretations of the Clause Which Creates a Triable Question of Fact Not Resolvable at the Pleading Stage.

Given that there are two or more possible reasonable interpretations of the Virus Exclusion Clause depending on how narrowly the Virus Exclusion Clause should be interpreted against the insurer,

the Virus Exclusion Clause is ambiguous under California law. *Stamm Theatres, Inc.,* 93 Cal.App.4th at 538, *see* supra. If a policy provision is capable of two or more reasonable interpretations, then it is considered ambiguous. *Id.* Ambiguities must be resolved against an insurance company and in favor of the insured. *Reserve Ins. Co.*, 30 Cal.3d. at 807-808, supra.

### 6. Recent Lower Court Decisions on Other COVID-19 Litigation Are Distinguishable and Do Not Address Human Droplets as the Covered Cause of Loss.

State Farm, in its brief, cites to several COVID-19 insurance case decisions issued in the past several weeks. At a high level, none of those cases apply here because none of the cases alleged physical loss or damage caused by human droplets.

Contrary to State Farm's characterization that there is no difference between the virus and droplets, Plaintiff's SAC is supported by findings of the WHO, the CDC, NIMH, and other peer-reviewed health research institutes like Proceedings of the National Academy of Sciences of the United States of America ("PNAS") which allege the physiological and physical distinctions between the virus and droplet. SAC at 11:16-24, 12:1-23, 13:1-22, 14:1-3.[3] Most importantly, the SAC allegations that droplets are different than the virus directly tracks almost exactly the recommended pleading which the Northern District in *Mudpie* has indicated would be sufficient to establish physical damage in order to survive a Rule 12(b)(6) motion, except that Plaintiff took it one step further to clarify the physical and causative distinctions between droplets and the virus particles—which distinctions are key to the fate of the exclusion causes, invoke California's statutorily required concurrent causation doctrine, and should be preserved for adjudication of evidence. Plaintiff's SAC is very distinguishable than recent California decision in *10E, LLC. v. Travelers Indemnity Co. of Connecticut,* 2:20-cv-04418-SVW-AS, 2020 WL

---

[3] As of the September 21, 2020 (the date of this brief's finalization), on the same CDC website cited in the SAC at Footnote 3 of the SAC, the CDC issued updated recommendations (reported widely on CNN as of this morning) in which it states that it is "currently updating its recommendations regarding airborne transmission", that "we are still learning how the virus spreads" and where it recognizes the distinct and independent role of droplets. See https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html; cf. SAC at Footnote 3.

PLAINTIFF'S OPPOSITION TO DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
CASE NO.: 5:20-CV-04265-BLF

5095587 (C. D. Cal. Sept. 2, 2020), where the plaintiff in that case did not plead any physical damage or physical loss to their restaurant. The distinction between virus particles and droplets lies at the heart of a nascent but evolving COVID-19 jurisprudence which the Northern District has now said is "very much in development." *Mudpie,* 2020 WL 5525171 at *8.

As such, the litany of cases cited by State Farm are all distinguishable and ultimately inapposite:

i.  Unlike plaintiffs who attempted to allege that the virus exclusion did not apply because the virus was not present in their properties (see e.g. *Diesel Barbershop, LLC. v. State Farm Lloyds,* 2020 WL 4724305, at *5 (W.D. Tex. Aug 13, 2020) (Motion at 1, 7, 12); *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, 20-258-CB-C30 (Mich. Cir. Ct., Ingham City) (Motion at 6, 13), Plaintiff pleads that direct physical damage occurred as a covered loss and specifically identifies human droplets and/or droplets with virus particles as the primary cause of the damage. SAC at 11:16-13:18, 17:1-21.

ii. Unlike in *Rose's 1, LLC. v. Erie Ins. Exch.*, No 2020 CA 002424B (D.C. Super Ct., Aug. 6, 2020) (Motion at 13), where the plaintiff alleged that a governmental edict, standing alone, constitutes a direct physical loss under an insurance policy, Plaintiff pleads that direct physical damage occurred as a covered loss and specifically identifies human droplets and/or droplets with virus particles as the primary cause of the damage. SAC at 11:16-13:18, 17:1-21.

iii. Unlike in *Social Life Magazine, Inc. v. Sentinel Ins. Co.,* 1:20-cv-3311 (S.D.N.Y., May 14, 2020) (Motion at 13), where the plaintiff alleged the loss of use of their printing equipment as the cause of loss that triggers coverage, Plaintiff alleges that direct physical damage occurred as a covered loss and specifically identifies human droplets and/or droplets with virus particles as the primary cause of the damage. SAC at 11:16-13:18, 17:1-21.

iv. Similar to *Diesel, Gavrilides,* and *Social Life Magazine*, the plaintiff in *Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) failed to allege accidental direct physical loss or damage to the property and instead plead that the government order was the sole cause of its losses. Motion at 1, 2, 12, and 16. This is completely distinguishable from Plaintiff's allegations of direct physical damage caused by human droplets and/or droplets with virus particles. SAC at 11:16-13:18, 17:1-21.

It is remarkable that all the decisions cited above by State Farm came from jurisdictions that recognize and enforce Anti-Concurrent Causation (ACC) clauses (clauses which allow end-runs around concurrent causation analysis), whereas California is one of the estimated four states that expressly prohibits ACC clauses and codifies such a prohibition in Cal. Ins. Code § 533. See also *Vardanyan,* Cal.App.4th at 786. As such, when viewing the litany of preliminary rulings in other states on this novel area of COVID-19 law, this Court should consider the cited decisions carefully, especially given that (1) other decisions arose in states that are obviously and historically more favorable to insurers where they also permit ACC clauses, and (2) California has a long history of upholding protection for insureds, as codified in Cal. Ins. Code §§ 532-533. (In one notable exception to the small, early string of Defendant favorable decisions cited by State Farm, the district court in Western District of Missouri denied the insurance defendant's motion to dismiss on physical damage grounds. See *Studio 417, Inc. v. Cincinnati Insurance Co.*, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020). Similar to *Studio 417*, in this case, Plaintiff pleads that damage occurred as a covered loss and specifically identifies human droplets as the primary cause of the damage. SAC at 11:16-13:18, 17:1-21. The *Mudpie* decision, discussed extensively above, went well beyond *Studio 417*, and clarified the Northern District's view of the requisite ingredients (all present in Plaintiff's SAC) to successfully plead physical damage for these cases.)

### C. Plaintiff Has Sufficiently Alleged Facts That Trigger Civil Authority Coverage by Alleging Human Droplets, With or Without Virus Particles, as a Covered Cause of Loss.

State Farm, in its brief, incorrectly surmised that the SAC tried to trigger the Civil Authority clause independently and shoehorn the language of the Civil Authority coverage to the Direct Physical Loss or Physical Damage requirement. Motion at 17:4-17. This is incorrect for the reasons discussed below. The language of the Civil Authority is as follows:

> ### 4. Civil Authority
> **a.** When a Covered Cause Of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss Of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of

Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

SAC at 9:3-16.

State Farm has argued that Plaintiff has not alleged sufficient facts to trigger Civil Authority coverage. Motion at 16:20-23, 17:1-3. This is simply incorrect. Reading the plain language of the Policy, Civil Authority coverage extends coverage to a specific situation that would not otherwise be covered under the Policy. SAC at 9:4-26. The "extended" coverage applies when access to the premises insured by the Policy is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate surrounding area of the insured premises. *Id.*

Applying that language to the allegations in the SAC, Plaintiff has satisfied both requirements. First, the SAC alleges direct physical loss or physical damage due to human droplets at the surrounding property, which as discussed previously, is a covered cause of loss. SAC at 11:16-13:18, 17:1-21; see *supra* at Section IV-A. Second, the language of the Santa Cruz County ordinance expressly prohibits access to Trinh's dental clinic, and the SAC pleads damage at the scheduled premises. SAC at 14:6-15:15, 17:5-12. Assuming these two factual allegations to be true, the SAC has alleged sufficient facts to show coverage under the Civil Authority clause. (*Prime Alliance Group, Ltd. v. Hartford Fire Ins. Co.*, No. 06-22535, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007) is a distinguishable, non-binding Florida case where claimant attempted to construe the civil authority by itself as the Covered Cause of Loss, and naturally, the court in *Prime Alliance* had to deny that construction.)

State Farm argued that even if the Civil Authority Clause somehow applies, Plaintiff cannot show that the Government Order fully prohibited access to Plaintiff's clinic. Motion at 19:14-22. To the extent that State Farm alleges that the Santa Cruz Order does not completely shut down access to Plaintiff's clinic when Plaintiff is a necessary business, the language of the policy only says "action of civil authority that prohibits access to the described premises," but the policy does not state *complete* prohibition of access to the premise. SAC at 9:6-8. Plaintiff has alleged that given the concern over the role of human droplets in COVID-19 transmission, State and Local authority ordinances were issued suspending normal, in-person, physical visitation of business properties (including clinics like Plaintiff's) to curb the threat of further spread and transmission of COVID-19. SAC at 18:5-9. State Farm's argument that access is not prohibited when there is no physical barricade to prevent people from

entering the clinic is irrelevant. Motion at 19:11-15. No such requirement exists in the Civil Authority language provided in the Policy. SAC at 9:4-25.

State Farm also argued that the Government Orders were preventative in nature in order to "slow the spread of [the] COVID-19 virus," and analogized the civil authority order to government orders in pre-hurricane evacuations or pre-terrorist attacks. Motion at 18:27-28, 19:1-3. However, these non-California cases are inapposite because the State and County Public Orders were issued in response to the actual physical presence of droplets and droplets which may contain virus particles. SAC at 17:22-23, 18:1-4.

### D. The Policy's "Loss of Income," "Extended Loss of Income," and "Extra Expense" Coverages Are Applicable Because the Virus Exclusion Clause Does Not Apply.

State Farm's primary argument is that these policy coverages do not apply because Plaintiff has not sufficiently alleged "accidental direct physical loss to the property." Motion at 19:24-28, 20:1-2. However, as discussed above at length in Sections IV.A.1 through IV.A.4, Plaintiff has alleged more than sufficient facts to satisfy the requirements of the "accidental direct physical loss to the property" under California Law. See Sections IV.A.1 through IV.A.4, *supra*.

State Farm's second argument rests on their virus exclusion clause, stating that a virus is not a "Covered Cause of Loss." Motion at 20:8-9. However, as thoroughly discussed above in Section IV.B.1 through Section IV.B.5, the virus exclusion, as presented in the policy language, does not apply for the reasons already discussed above. See Sections IV.B.1-4, *supra*.

### E. Additional Policy Exclusions Do Not Bar Plaintiff's Claims.

State Farm argues that coverage is also barred by the "Ordinance or Law," the "Acts of Decisions," and the "Consequential Loss" Exclusions. Motion at 20:25-27. These Exclusions do not justify a Rule 12(b)(6) dismissal for reasons similar to those discussed already in connection with the Virus Exclusion Clause.

#### 1. Ordinance or Law Exclusion Is Not a Basis for 12(b)(6) Dismissal.

The first section of this exclusion reveals its intent: "(1) The enforcement of any ordinance or law: (a) Regulating the construction, use or repair of any property[;]" As discussed above, California law requires every word in a policy be given a meaning. Cal. Civ. Code § 1641 ("[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause

helping to interpret one other."); *Lyons*, Cal.App.4th at 886 (insurance policy must be read so "that all words in a contract are to be given meaning.")

Reading the clause together with the word construction, the exclusion on its plain reading seems to be directed to ordinances and laws that regulate the construction, use, or repair of any property. The State and County Health orders, on their face, do not regulate the construction, use, or repair of any property. Rather, they are written for the specific intent to order all individuals to stay at home to prevent further transmission of COVID-19 through human droplets. SAC at 18:5-9. Applying *Manzarek, MacKinnon*, and considering ambiguity in light of *Reserve Ins. Co.* (i.e. resolving ambiguities in favor of the insured), the Court cannot possibly at the pleading stage use the Ordinance or Law Exclusion to bar coverage and the complaint. The Ordinance or Law Exclusion is ambiguous at best because if State Farm's interpretation is correct, it is inconsistent with the Civil Authority coverage, and at worst, applying the narrowest possible interpretation, it literally has no application to the pandemic ordinances. Cf. SAC at 18:5-9 with SAC at Ex. A at A-18.

## 2. Acts or Decisions Exclusion Is Not a Basis for 12(b)(6) Dismissal.

The language of the "Acts or Decisions" exclusion attempts to exclude coverage for, "Conduct, acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault." SAC, Exhibit A at A-19. State Farm argues that the State and County Government Order constitutes an act that somehow triggers this exclusion. Motion at 21:8-25. First, State Farm's argument completely ignores the allegations of the human droplets as the Covered Cause of Loss. SAC at 17:1-21. The human droplets is simply not applicable to exclusion language.

Moreover, State Farm fails to apply *Manzarek, MacKinnon,* or concurrent causation, all of which would render the exclusion limited or inapplicable to the damage caused by the human droplets prompting the COVID-19 ordinances. The language is indeed exemplifying the problem of overbroad and ambiguous language expressed by *Manzarek* and *MacKinnon*. The literal interpretation would exclude any possible act of any person anywhere for any reason. The clause should be considered illusory and disregarded on its face. See *Julian*, 35 C4th at 759.

### 3. The Consequential Loss Exclusion Is Not a Basis for 12(b)(6) Dismissal.

The policy language for "Consequential Loss" simply states, "Delay, loss of use or loss of market." Exhibit A at A-18. First, the clause is so ambiguous that it does not even make any sense when read in the context of the human droplets as the Covered Cause of Loss. State Farm's reading would run afoul of *Manzarek* for being overbroad, and run afoul of *MacKinnon* for sheer absurdity.

Second, State Farm tried to apply the clause where an insured alleged "its damages were caused by its inability to access" its property and "did not contend that its [property] had been physically damaged in any way [citations omitted.] Motion at 22:1-4. This argument is simply inapposite when Plaintiff already extensively pled the physical damage associated with human droplets in its premises and surrounding premises. SAC at 17:1-21.

### F. Plaintiff Has Sufficiently Pled Factual Allegations for Each of Its Causes of Action to Survive the 12(b)(6) Motion.

Defendant's contention that each of Plaintiff's seven causes of action hinges on a finding of coverage is true. However, as argued above, questions of coverage cannot be adjudicated at the pleading stage, and Plaintiff has sufficiently pled plausible facts to support each of the causes of action to survive State Farm's Motion to Dismiss.

### 1. Counts 1 Through 4 – Breach of Contract, Breach of Covenant of Implied Faith and Fair Dealing, Bad Faith Denial, and Declaratory Relief.

Defendant's sole attack on these causes of action is that all claims derive from the Policy, and if there is no coverage, there are no claims. Motion at 22:12-15. If the Court denies the Rule 12(b)(6) motion for the reasons set forth above, there is no other basis to dismiss Counts 1-4.

### 2. Counts 5 – Unjust Enrichment.

Plaintiff acknowledges that as a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract. (*California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.* (2001) 94 Cal.App.4th 151, 172, 114 Cal.Rptr.2d 109.). Plaintiff will withdraw this cause of action for this Complaint (it was included in other iterations of the complaint against other carriers where certain defendants claimed no contractual privity).

### G. Counts 6 and 7 – Violation of Cal. Bus. & Prof. Code § 17200 (UCL) and Injunctive Relief Under § 17200.

State Farm's rapid denial of Plaintiff's claim violates California UCL laws. Specifically, State Farm's bad faith denial meets the definition of unfair business practice in the three recognized

definitions of "unfair" under the UCL: (i) unfair (ii) fraudulent or (iii) unlawful. The SAC pleads conduct which fits all three categories of conduct. SAC at 18:10-20:24, 29:1-31:17.

That said, it is true that under California law, a UCL action is equitable in nature (see *Korea Supply Co. v. Lockheed Martin Corp,* 29 Cal. 4th 1134, 1144 (2003)), and the "remedies available in a UCL action are limited to injunctive relief and restitution," both of which are equitable remedies.  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (Cal. Ct. App. 2009).  In addition, "it is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief," *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992).

However, the Court does not need to reach this issue until a later procedural juncture in the case, when there is more certainty as to whether the legal relief sought would, in fact, be "adequate." A number of other courts have declined to dismiss UCL claims by a plaintiff because there is no bar to the pursuit of alternative remedies at the pleadings stage. *Aberin v. Am. Honda Motor Co., Inc.*, 2018 U.S. Dist. LEXIS 49731, at *26 (N.D. Cal. Mar. 26, 2018).  In *Adkins v. Comcast Corp.*, 2017 U.S. Dist. LEXIS 137881 (N.D. Cal. Aug. 1, 2017), for example, the Court noted that a "few federal courts seem to have decided that claims for equitable relief should be dismissed at the pleading stage if the plaintiff manages to state a claim for relief that carries a remedy at law," but declined to follow suit because the court was "aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleadings stage."  *Id.* at *7; *see also Vicuña v. Alexia Foods, Inc.*, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. April 27, 2012); see also *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 U.S. Dist. LEXIS 83553, at *19 (N.D. Cal. May 17, 2018) (declining to dismiss UCL claim because plaintiff has adequate remedy at law on ground that there is "no bar to the pursuit of alternative remedies at the pleading stage.")

From a relief standpoint, injunctive relief is appropriate when insurance companies like State Farm chose to litigate the issue instead of expending good faith effort to investigate the claims to see whether some form of coverage is available to the policyholders, who desperately needed (and still need) the funds to literally survive the ongoing pandemic.

## V.  CONCLUSION

For the reasons stated above, Plaintiff requests that the Court deny State Farm's Motion to Dismiss for Failure to State a Claim. If the Court grants any part of the Motion in view of this evolving area of law and for the reasons set forth in *Mudpie*, the Court should grant leave to amend.

DATED: September 21, 2020                    Respectfully Submitted by,

                                             /s/ Sanjiv N. Singh
                                             Sanjiv N. Singh, JD, MD.
                                             SANJIV N. SINGH, A PROFESSIONAL LAW
                                             CORPORATION

                                             /s/ Michael B. Indrajana
                                             Michael B. Indrajana
                                             INDRAJANA LAW GROUP, A PROFESSIONAL
                                             LAW CORPORATION
                                             Attorneys for Plaintiff Karen Trinh, DDS., Inc.