UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAREN TRINH, DDS, Inc., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation doing business in California, and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 5:20-cv-04265-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF 27] |

This case arises from a dispute over the interpretation of a business insurance policy against the backdrop of recent public health orders attempting to curb the spread of COVID-19. Karen Trinh, DDS, Inc. ("Plaintiff") sues State Farm General Insurance Company ("Defendant") and unidentified Does 1 through 50 for denying an insurance claim for loss of business income. Plaintiff asserts seven causes of action: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Bad Faith Denial; (4) Declaratory Relief; (5) Unjust Enrichment; (6) Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et seq.*; and (7) Injunctive Relief under Cal. Bus. & Prof. Code § 17200 *et seq.* Second Am. Compl. ("SAC"), ECF 26. Defendant brings this Motion to Dismiss for failure to state a claim. Mot. to Dismiss Second Am. Compl. ("Mot."), ECF 27. Pursuant to Civil Local Rule 7-1(b), the Court found the Motion appropriate for determination without oral argument on October 30, 2020. Order Vacating Hr'g, ECF 33. Having considered the parties' briefing as well as the rapidly evolving applicable law, the Court GRANTS this Motion WITH LEAVE TO AMEND.

**I.    BACKGROUND**

### A. Factual Allegations

Plaintiff is an active dental practice in Watsonville, California. SAC ¶ 4. To safeguard against unexpected calamities, on April 1, 2019, Plaintiff obtained from Defendant a business insurance policy (the "Policy"), which remains effective today. SAC ¶¶ 11-14. The Policy covers loss of income and extra expenses for "accidental direct physical loss" to "Covered Property," subject to certain limitations, including a "Virus Exclusion." SAC ¶ 19.

In March 2020, COVID-19 was recognized as a pandemic, prompting governments around the world to enact laws tackling the crisis. SAC ¶¶ 21-22. To curb the spread of the virus, counties across California, as well as the state itself, issued public health ordinances aimed to limit transmission of the virus. *See* SAC ¶¶ 23-31. As a designated "essential business" under the Order of the Santa Cruz County Health Officer to Shelter in Place ("Santa Cruz Order"), Plaintiff continued operations but was limited to urgent care and emergency visits only, causing substantial revenue reductions. SAC ¶¶ 32-33.

On April 1, 2020, Plaintiff contacted Defendant to determine whether the Policy covered loss of income as a result of the health ordinances. SAC ¶ 43. Defendant promptly informed Plaintiff that the Policy likely did not cover such loss but explained how to initiate a claim. SAC ¶ 43. Plaintiff submitted a claim on April 3, 2020. Compl. ¶ 43. The next day, Defendant, pointing to the Policy's Virus Exclusion, informed Plaintiff that the claim was denied. SAC ¶ 43.

### B. Procedural History

Plaintiff commenced this action on April 6, 2020, in the Superior Court of California, County of Santa Cruz. Notice of Removal, Ex. A ("Compl."), ECF 1-1. On May 22, 2020, Plaintiff filed an amended complaint in state court. Notice of Removal, Ex. B ("FAC"), ECF 1-2. Defendant filed a Notice of Removal on June 26, 2020. Notice of Removal, ECF 1. Defendant moved to dismiss the First Amended Complaint on July 6, 2020, and the parties stipulated to allowing Plaintiff to amend the complaint on August 19, 2020. *See* Mot., ECF 7; Stipulation, ECF 25. Plaintiff filed the Second Amended Complaint on August 24, 2020. *See* SAC. Defendant again moved to dismiss on September 5, 2020. *See* Mot. Plaintiff filed its Opposition on September 21, 2020. *See* Opp'n to Mot. to Dismiss ("Opp'n"), ECF 29. Defendant filed its Reply

on October 13, 2020.  *See* Reply to Opp'n ("Reply"), ECF 29.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6): Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  While a complaint typically need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Federal Rule of Civil Procedure 15(a): Leave to Amend

Under Federal Rule of Civil Procedure 15(a), the Court should freely grant leave to amend "when justice so requires," keeping in mind Rule 15's underlying purpose "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).  A court has discretion, however, to deny leave to amend where amendment is futile. *Leadsinger, Inc. v.*

3

1   *BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182

2   (1962)).

3   **III.   DISCUSSION**[1]

4       Relying on a flurry of recent cases across the country interpreting similar insurance claims,

5   Defendant argues that the Policy language plainly does not cover Plaintiff's alleged losses,

6   meaning there is no breach of contract. *See* Mot. 1-3. And because there is no breach of contract,

7   the derivative contract claims necessarily fail. *See* Mot. 22-25. Plaintiff contends that its

8   insurance claim is covered, either by the Policy's plain language or, alternatively, because of its

9   ambiguities. Opp'n 1-2.

10       In California, the interpretation of an insurance policy is a question of law for the court to

11   decide. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "Insurance policies are

12   contracts, and the ordinary rules of contract interpretation apply." *McMillin Homes Constr., Inc.*

13   *v. Nat'l Fire & Marine Ins. Co.*, 35 Cal. App. 5th 1042, 1050 (Cal. Ct. App. 2019). In interpreting

14   an insurance policy, the Court first examines the contract language to determine its plain or

15   ordinary meaning. *Waller*, 11 Cal. 4th at 18 (citation omitted). A policy is ambiguous if it is

16   "capable of two or more constructions, both of which are reasonable." *Id.* Where a policy is

17   ambiguous, it must be interpreted "to protect the objectively reasonable expectations of the

18   insured." *Minkler v. Safeco Inc.*, 49 Cal. 4th 315, 321 (2010). Courts should not, however, "strain

19   to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19. If the insured shows that

20   a claim falls within the policy terms, the burden shifts to the insurer to demonstrate that an

21   exclusion applies. *Id.* at 16.

---

[1] Defendant requests judicial notice of several public documents, including state and local health ordinances as well as recent district court rulings addressing similar insurance claims and policies. Mot. 1. n.1. Courts may take judicial notice of matters either that are "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, "a court may take judicial notice of matters of public record . . . as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Tech., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (internal brackets and quotation marks omitted). Here, the documents for which Defendant requests judicial notice are matters of public record. *See* Exhibits 2-11, ECF 27; Notice, ECF 32; Notice, ECF 34; Notice, ECF 36; Notice, ECF 37. And their factual contents are not disputed. *See generally* Mot.; Opp'n.; Reply. Thus, the Court grants Defendant's request.

With this framework in mind, the Court discusses Plaintiff's claims.

### A. Breach of Contract

In Claim One, Plaintiff alleges breach of contract for Defendant's alleged failure to fulfill its obligations under the Policy. SAC ¶¶ 49-55. Defendant argues that the breach of contract claim should be dismissed as a matter of law because "[u]nder the plain language of the Policy, Plaintiff's claimed losses both do not meet the Policy's terms of coverage and are subject to exclusions, including the Policy's Virus Exclusion." Mot. 4-5. This Court agrees with Defendant.

#### 1. Virus Exclusion

Defendant moves to dismiss first on the ground that the Policy excludes from its coverage any loss caused by virus. Mot. 5. This Court agrees that Defendant has met its burden of showing that the Virus Exclusion precludes coverage. *See Waller*, 11 Cal. 4th at 16.

To obtain relief, Plaintiff's alleged losses must be covered under the Policy. *See* Mot. Ex. A ("Policy") Ex. A-16, § I.[2] The Virus Exclusion states, in relevant part:

> SECTION I — EXCLUSIONS . . .
> 2. We do not insure under any coverage for any loss caused by one or more of the following: . . .
> i. Fungi, Virus Or Bacteria . . .
> (2) Virus, bacteria, or other microorganism that induces or is capable of inducing physical distress, illness or disease . . .

Policy Ex. A-16, A-17 § I.2.i.(2), ECF 27-1. The language is plain and unambiguous—*any* loss caused by virus that can induce physical distress, illness, or disease, such as COVID-19, is excluded from coverage. *See Waller*, 11 Cal. 4th at 18. Courts in this circuit contemplating comparable insurance policy exclusions agree. *See, e.g.*, *10E LLC v. Travelers Indem. Co. of*

---

[2] Although a district court may generally not consider material beyond the pleadings in a motion to dismiss based on Rule 12(b)(6), it can consider extrinsic materials when their "authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation and quotation marks omitted). Here, Plaintiff does not contest the authenticity of the Policy provided by Defendant. And because Plaintiff seeks to recover under the Policy, the Second Amended Complaint necessarily relies on it. Thus, the Court "will consider the language contained directly in the Policy in resolving this [M]otion." *See Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04423-AB-SK, 2020 WL 5938689, at *3 (C.D. Cal. Oct. 29, 2020).

*Conn.*, No. 2:20-cv-04418-SVW-AS, 2020 WL 6749361, at *3 (C.D. Cal. Nov. 13, 2020) (dismissing with prejudice because "the plain meaning of the virus exclusion does foreclose coverage under the Policy"); *Boxed Food Co., LLC v. Cal. Capital Ins. Co.*, No. 20-cv-04571-CRB, 2020 WL 6271021, at *4-5 (N.D. Cal. Oct. 26, 2020) (finding no ambiguity in the virus exclusion clause despite the absence of the word "pandemic"); *Franklin EWC, Inc. v. Hartford Fin. Serv. Grp., Inc.*, No. 20-cv-04434 JSC, 2020 WL 5642483, at *1-2 (N.D. Cal. Sept. 22, 2020) (finding that the virus exclusion plainly and unambiguously does not cover business loss from public health orders relating to the pandemic).

Furthermore, the facts alleged show that Plaintiff's business revenue loss was "caused by" COVID-19, i.e., virus. *Cf. Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04423-AB-SK, 2020 WL 5938689, at *5 (C.D. Cal. Oct. 29, 2020) (finding that the alleged loss or damage was caused by the novel coronavirus). The Second Amended Complaint alleges that the various stay-at-home orders were "aimed at eliminating the possible spread of virus through various transmission methods and community spread," SAC ¶ 34, and that government officials "were looking for any way to reduce the spread of the virus" by "reducing droplet spread." SAC ¶ 35. It further alleges that state and county health ordinances "suspend[ed] normal, in-person, physical visitation of business properties to curb the threat of further spread and transmission of COVID-19 by any of the currently-known modes of transmission." SAC ¶ 42. The Santa Cruz Order itself stated that its intent was "to ensure that the maximum number of people self-isolate in their places of residences to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 to the maximum extent possible." Mot. Ex. E-1 ("Santa Cruz Order"), ECF 27-5. And, according to the Second Amended Complaint, it was because of the business shutdown that Plaintiff suffered "substantial revenue reductions." SAC ¶ 32.

Plaintiff seeks to evade the Virus Exclusion by claiming that respiratory droplets, not the virus itself, are "the real focus" of public health ordinances. SAC ¶ 25-26. In making this claim, Plaintiff creatively attempts to reframe the cause of the loss as the risk of droplets on building surfaces rather than virus exposure at the building. *See* SAC ¶¶ 23-26. But this Court agrees with

6

1  Defendant and numerous other courts that there is no meaningful difference between the virus
2  itself and droplets that contain the virus. *See* Mot. 7. As Judge Gilliam recently explained in
3  addressing this same argument, "the stay-at-home ordinances plainly sought to prevent COVID-
4  19—a virus—from spreading," and "[r]espiratory droplets are simply one mechanism through
5  which the virus can spread." *HealthNOW Med. Ctr., Inc. v. State Farm Gen. Ins. Co.*, No. 20-cv-
6  04340-HSG, 2020 WL 7260055, at *2 (N.D. Cal. Dec. 10, 2020); *see also Founder Inst. Inc. v.
7  Hartford Fire Ins. Co.*, No. 3:20-cv-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22,
8  2020) (rejecting the same argument because it was merely "a different way of describing the same
9  thing," i.e., that "the ordinances sought to prevent COVID-19 from spreading").

California's efficient proximate cause doctrine does not save Plaintiff's claim either. *See* Opp'n 15-16. An efficient proximate cause is "a cause of loss that predominates and sets the other cause of loss in motion." *Boxed Food*, 2020 WL 6271021, at *4 (citing *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 402-03 (1989)). When loss is attributable to both a covered cause and an excluded cause, the efficient proximate cause of the damage must be covered. *Boxed Food*, 2020 WL 6271021, at *4 (citing *Garvey*, 48 Cal. 3d at 403). Here, but-for COVID-19, the civil authority orders would not exist, and Plaintiff would not have lost business revenue, making the virus—an exclusion under the Policy—the efficient proximate cause of Plaintiff's losses. *See Boxed Food*, 2020 WL 6271021, at *4 (finding that COVID-19 was the efficient proximate cause of the plaintiffs' losses because "the Civil Authority Orders would not exist absent the presence of COVID-19").

Thus, this Court finds that the Plaintiff's alleged loss is not covered because Defendant has, as a matter of law, met its burden of showing that the Policy's Virus Exclusion applies.

**2. Accidental Direct Physical Loss**

The Second Amended Complaint is also deficient for the independent reason that it fails to allege an "accidental direct physical loss" to Covered Property. *See* Mot. 10; *see also* Policy Ex. A-14; Mot. Ex. A ("Endorsement") Ex. A-61 § 1.a. & 2.a., A-62 § 3.b. In California, a "physical loss" is defined by its ordinary meaning, which is property damage "within the common understanding of the term." *MRI Healthcare Center of Glendale, Inc. v. State Farm Gen. Ins. Co.*,

7

1  187 Cal. App. 4th 776, 780 (Cal. Ct. App. 2010). Hence, physical loss is "widely held to exclude
2  alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the
3  property insurer when the insured merely suffers a detrimental economic impact unaccompanied
4  by a distinct, demonstrable, physical alteration of the property." *Id.* at 778-79 (internal citations
5  and quotation marks omitted). Some courts have read the definition of "direct physical loss" more
6  broadly as extending to physical loss of property, such as "the permanent dispossession of
7  something." *Total Intermodal Serv. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908
8  AB (KSx), 2018 WL 3829767, at *4 (C.D. Cal. July 11, 2018). In other words, the term "'loss of'
9  contemplates that the property is unrecoverable." *Robert W. Fountain, Inc. v. Citizens Ins. Co. of
10 Am.*, No. 20-cv-05441-CRB, 2020 WL 7247207, at *4 (N.D. Cal. Dec. 9, 2020); *see also Mudpie,
11 Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-03213-JST, 2020 WL 5525171, at *3-4 (N.D.
12 Cal. Sept. 14, 2020) (finding that the business shutdown, i.e., the loss of "use" of the property, did
13 not constitute a physical loss because neither the storefront nor the inventory was misplaced or
14 unrecoverable).
15     Here, the Second Amended Complaint fails to show that COVID-19 caused direct physical
16 loss to Covered Property, as there are no allegations of "distinct, demonstrable, physical
17 alteration" of Plaintiff's dentistry, nor are there allegations that Plaintiff was permanently
18 dispossessed of anything. *See generally* SAC; Opp'n 8-9. Plaintiff suggests that the alleged
19 losses are not purely economic because human droplets containing COVID-19 have either
20 damaged the premises or pose a significant risk of damaging the premises. Opp'n 9; SAC ¶¶ 40-
21 41. But Plaintiff has not alleged that any covered property "damaged" by droplets containing the
22 virus is unrecoverable. *See generally* SAC. In other words, Plaintiff's allegations of "direct
23 physical loss" do not even fall within an expansive interpretation of the phrase. *See Long Affair
24 Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, No. SACV 20-01713-CJC(JDEx), 2020 WL 6865774,
25 at *3 (C.D. Cal. Nov. 12, 2020) (explaining that the "more liberal interpretation" of "direct
26 physical loss" still requires the permanent dispossession of something); *Mudpie*, 2020 WL
27 5525171, at *4 (explaining that *Total Intermodal*'s more expansive interpretation of "direct
28 physical loss of property" considers allegations of a physical alteration of the property or

1 permanent dispossession).

2 Thus, Plaintiff's Second Amended Complaint fails to allege facts demonstrating

3 "accidental direct physical loss" to Covered Property, which is a prerequisite to coverage.

### 3. Civil Authority

Plaintiff alternatively alleges that the Policy provides for loss of income under the Civil Authority coverage. SAC ¶¶ 15-16, 18-19, 33, 53. Defendant argues that Plaintiff does not allege facts to satisfy coverage under this section of the Policy. Mot. 16-17. The Civil Authority provision states:

> 4. Civil Authority
>
> a. When a Covered Cause Of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss Of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of the civil authority is taken in response to a dangerous physical condition resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Endorsement Ex. A-62 § 4. This Court agrees with Defendant that Plaintiff's Second Amended Complaint fails to allege facts addressing several requirements under the Civil Authority provision. *See* Mot. 16-17.

First, to trigger this provision, Plaintiff must allege a Covered Cause Of Loss. Endorsement Ex. A-62 § 4. For the reasons discussed above, the Virus Exclusion applies, meaning the alleged loss is not covered. *See supra* § III.A.1.; *see also Boxed Food*, 2020 WL 6271021, at *3-4 (finding that the plaintiff's claim collapsed under the covered cause of loss requirement of the civil authority provision because the policy's virus exclusion applied); *Franklin EWC*, 2020 WL 5642483, at *2 (finding that the civil authority provision did not apply because the loss was a direct result of COVID-19, which was a cause of loss falling "squarely within the Virus Exclusion").

Second, Plaintiff has failed to allege damage that is "accidental direct physical loss" to

9

nearby property, i.e., property other than that at the described premises. Endorsement Ex. A-62 § 4. As discussed above, the only "damage" to any property alleged is droplets containing virus, which does not constitute an accidental direct physical loss. *See supra* § III.A.2.

Thus, Plaintiff has failed to allege coverage under the Civil Authority provision.

### 4. Other Provisions & Exclusions

Plaintiff alleges coverage under the Loss of Income, Extended Loss of Income, and Extra Expense provisions. SAC ¶¶ 13, 16, 18. To trigger these provisions, the alleged loss must result from a Covered Cause Of Loss. Endorsement Ex. A-61, A-62. As discussed above, the Virus Exclusion takes Plaintiff's insurance claim out of coverage. *See supra* § III.A.1. Furthermore, coverage under these provisions occurs only where operations are suspended by "accidental direct physical loss" to property during a "period of restoration." *See* Endorsement Ex. A-61, A-62. As explained, Plaintiff does not allege such loss. *See supra* § III.A.2. Thus, the pleadings fail to state a claim for relief under the Loss of Income, Extra Expense, and Extended Loss of Income provisions. *See Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4-5 (S.D. Cal. Sept. 11, 2020) (dismissing an claim based on COVID-19 health orders under the business income and extra expense provision because it required direct physical loss of or damage to property, which the plaintiffs did not allege).

In addition to alleging that Plaintiff's claims are barred by the Virus Exclusion, Defendants alternatively argue that Plaintiffs claims are barred by three other exclusions: (1) Ordinance Or Law, (2) Acts Or Decisions, and (3) Consequential Loss. Mot. 20-22; *see also* Policy Ex. A-18, A19. Plaintiff argues that the applicability of these three exclusions should not be decided at the pleading stage. Opp'n 21-23. Since the Court has already found that Plaintiff's Second Amended Complaint fails to plead facts demonstrating coverage and supporting its breach of contract claim, it is unnecessary to address these alternate arguments at this time. *See HealthNOW*, 2020 WL 7260055 (declining to reach identical claims raised in briefings at Docket Nos. 25, 28, 29, and 30).

### 5. Conclusion

In sum, Plaintiff fails to plead facts sufficiently demonstrating that the alleged loss is covered under the Policy. And because there is no coverage, there is no breach of contract. While

10

it does not appear that Plaintiff can cure deficiencies in the Second Amended Complaint given the nature of the claims, out of an abundance of caution the Court will grant Plaintiff the opportunity to amend in accordance with its Rule 11 obligations. Thus, Defendant's Motion as to Claim One is GRANTED WITH LEAVE TO AMEND.

### B. Other Contract-Based Claims

In Claims Two, Three, and Four, Plaintiff seeks relief for Defendant's alleged breach of the implied covenant of good faith and fair dealing, bad faith denial, and declaratory relief. SAC ¶¶ 56-77. Where a claim is necessarily premised upon finding coverage in an insurance policy and no coverage exists, it fails. *See Mark's Engine*, 2020 WL 5938689, at *5-6 (dismissing with prejudice claims for declaratory relief, breach of contract, bad faith, and violation of the UCL because the insurance policy did not provide coverage for the loss alleged). Here, because Plaintiff's alleged business loss is not covered under the Policy, there is no breach of contract, meaning that Plaintiff's other contract-based claims for breach of the covenant of good faith and fair dealing, bad faith denial, and declaratory relief also fail. *See Franklin EWC*, 2020 WL 5642483, at *4 (dismissing the "contract-based claims for breach of contract, breach of covenant of good faith and fair dealing, bad faith denial of an insurance claim, . . . and declaratory relief" for failing to show that the alleged losses caused by business shutdowns from COVID-19 were covered). Thus, Defendant's Motion as to Claims Two, Three, and Four is also GRANTED WITH LEAVE TO AMEND.

### C. Unjust Enrichment

In Claim Five, Plaintiff alleges unjust enrichment for the policy payments made from 2019 to 2020. SAC ¶¶ 78-83. "[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001). Here, there is an existing insurance policy defining the parties' rights and obligations. *See* Policy. Plaintiff concedes that unjust enrichment cannot lie in this case and therefore withdraws this claim. Opp'n 23. Thus, Defendant's Motion as to Claim Five for unjust enrichment is GRANTED WITH PREJUDICE.

### D. California's Unfair Competition Law ("UCL") Claims

In Claims Six and Seven, Plaintiff alleges that Defendant engaged in unfair competition and requests injunctive relief under Cal. Bus. & Prof. Code § 17200 *et seq.* SAC ¶¶ 84-98. Defendant argues that the unfair business practices claim relies on and therefore falls with the breach of contract claim, and that injunctive relief is inappropriate because there is an adequate remedy at law. Mot. 23-24. Plaintiff reasserts that the insurance claim was wrongfully denied and urges this Court to refrain from ruling on the issue of remedies until there is more certainty regarding the extent to which the legal relief sought is "adequate." Opp'n 23-24.

The UCL provides a cause of action for business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. Each prong is uniquely defined and therefore "captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks omitted). "The UCL's coverage is sweeping, and its standard for wrongful business conduct intentionally broad." *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal. 2014) (internal quotation marks omitted). But because a UCL action is equitable in nature, its remedies for private individuals "are limited to restitution and injunctive relief." *Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567 AHM (AGRx), 2009 WL 5184422, *2 (C.D. Cal. Dec. 21, 2009).

Here, Plaintiff bases the claims for violation of the UCL on Defendant's alleged bad faith denial of the insurance claim. *See* SAC ¶¶ 84-94. Plaintiff's UCL claim, however, is tethered to Defendant's alleged breach of the Policy. *See* SAC ¶¶ 84-94. As discussed, the facts in the pleading do not demonstrate such breach, meaning Plaintiff has not alleged fraudulent, unfair, or unlawful conduct creating liability under the UCL. *See* SAC ¶¶ 84-94; *see also 10E LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04418-SVW-AS, 2020 WL 5359653, at *6 (C.D. Cal. Sept. 2, 2020) (dismissing the UCL claim, which was based on entitlement to coverage, because the Policy did not provide coverage as a matter of law); *Pappy's Barber Shops,* 2020 WL 5500221, at *6-7 (same); *Mark's Engine*, 2020 WL 5938689, at *6 (same).

Furthermore, Plaintiff seeks an injunction requiring Defendant to (1) cease the alleged unfair business practices, (2) pay monies owed, and (3) refrain from wrongfully denying similar

12

claims going forward. SAC ¶¶ 94, 96-97. Plaintiff also states that there is no adequate remedy at law for the threatened injury. SAC ¶ 98. But because Plaintiff's UCL claim for injunctive relief is predicated on Defendant's alleged unfair business practices, it too falls. *See* SAC ¶ 96; *see also HealthNOW*, 2020 WL 7260055, at *2 (dismissing all UCL causes of action where the insurance claims were not covered under the policy); *Founder*, 2020 WL 6268539, at *1 (same). Should Plaintiff cure the pleadings with facts sufficient to create a viable UCL claim, the Court will revisit whether it is barred because there is an adequate remedy at law. *See* Mot. 24; Opp'n 24; Reply 15; *see also Franklin EWC*, 2020 WL 5642483, at *4 (dismissing the UCL claim for injunctive relief because it was based on conduct for which there was an adequate remedy at law); *compare Adkins v. Comcast Corp.*, No. 16-cv-05969-VC, 2017 WL 3491973, at *5 (N.D. Cal. Aug. 1, 2017) (allowing the plaintiff to proceed because the court was "aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleading stage"), *with Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal at the pleading stage and holding that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action"), *and In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *2-3 (N.D. Cal. Oct. 13, 2020) (finding that *Sonner* extends to preclude claims for injunctive relief).

In accordance with Rule 11, Plaintiff may amend the Second Amended Complaint to plead facts, if possible, demonstrating that Defendant engaged in unfair business practices and that there is no adequate remedy at law. *See HealthNOW*, 2020 WL 7260055, at *2 (granting leave to amend the UCL claims); *Founder*, 2020 WL 6268539, at *1 (same). Accordingly, Defendant's Motion is GRANTED WITH LEAVE TO AMEND as to Claims Six and Seven for Unfair Competition and Injunctive Relief.

### IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is as follows:

(1) GRANTED WITH LEAVE TO AMEND as to Claims One, Two, Three, Four, Five, Six,

13

and Seven for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Bad Faith Denial, Declaratory Relief, Unfair Competition Under Bus. & Prof. Code § 17200 *et seq.*, and Injunctive Relief Under Bus. & Prof. Code § 17200 *et seq.*; and

(2) GRANTED WITH PREJUDICE as to Claim V for Unjust Enrichment.

Plaintiffs shall file an amended Complaint **no later than 30 days after the filing of this Order.**

Dated: December 28, 2020

_____
BETH LABSON FREEMAN
United States District Judge